# TOLEDO, DELPHOS AND BURLINGTON RAILROAD COMPANY *v.* HAMILTON.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 184. Argued January 10, 1890.— Decided March 17, 1890.

A recorded mortgage, given by a railroad company on its roadbed and other property, creates a lien whose priority cannot be displaced thereafter either directly by a mortgage given by the company, or indirectly by a contract between the company and a third party for the erection of buildings or other works of original construction.

Whether a mechanic's lien could, under the statutes of Ohio in force at the time of the attempted filing of a lien in this case, be placed upon a railroad, *quære.*

The priority of a mortgage debt upon a railroad has been sometimes displaced in favor of unsecured creditors, when those debts were contracted for keeping up a railroad, already built, as a going concern; but those cases have no application to a debt contracted for original construction.

A mortgage with words of general description conveys land held by a full equitable title as well as that held by a legal title.

IN EQUITY. The case is stated in the opinion.

*Mr. John M. Butler* and *Mr. Robert G. Ingersoll* (with whom was *Mr. Clarence Brown* on the brief) for appellants.

*Mr. A. W. Scott* and *Mr. John H. Doyle* for appellee.

Mr. Justice Brewer delivered the opinion of the court.

The question in this case arises between a mortgagee and a party claiming a mechanic's lien upon the mortgaged premises, as to priority of payment. The facts are these: On January 17, 1880, The Toledo, Delphos and Burlington Railroad Company executed and delivered its first mortgage to the Central Trust Company of New York, to secure the payment of $1,250,000 six per cent bonds. The description of the property conveyed by this mortgage is as follows: "Unto the Central Trust Company of New York, and to its successor or successors in trust, and for the uses and trusts hereby created, all and singular the line of railroad of the said party of the first part, as the same now is or hereafter may be constructed, between Toledo, Lucas County, Ohio, through the counties of Lucas, Wood, Henry, Putnam, Allen and Van Wert, in the State of Ohio; and the counties of Adams, Wells, Huntington, Wabash, Miami, Grant and Howard, in the State of Indiana, to the city of Kokomo, Indiana; being about one hundred and eighty miles in length; together with all and singular the right of way; road-bed, made and to be made; its track, laid or to be laid; between the terminal points aforesaid; together with all supplies, depot grounds, rails, fences, bridges, sidings, engine-houses, machinery, shops, buildings, erections, in any way now, or hereafter, appurtenant unto said described line of railroad; together with all the engines, machinery, supplies, tools and fixtures, now, or at any time hereafter, owned or acquired by said party of the first part, for use in connection with its line of railroad aforesaid; and all depot grounds, yards, sidings, turn-outs, sheds, machine shops, leasehold rights and other terminal facilities now, or hereafter, owned by the said party of the first part, together with all and singular the powers and franchises thereto belonging, and the tolls and income and revenue to be levied and derived therefrom."

The Trust Company accepted the trust created by this mortgage, and the bonds were issued by the railroad company, certified by the trustee, and sold on the market. The

mortgage was, within a few days after its execution, duly recorded in the proper counties. In October, 1883, default having occurred in the payment of interest, the Trust Company brought suit to foreclose. There being a conflict of interest between the bondholders under this and those under a terminal trust mortgage subsequently executed by the railroad company, a committee of bondholders under the first mortgage, consisting of James M. Quigley, Charles T. Harbeck and John McNab, was appointed to represent the interest of such bondholders; and by order of the court duly made, co-complainants. Thomas H. Hamilton, appellee, intervened, and filed his petition claiming a mechanic's lien. On March 20th, May 9th and June 2d, 1883, respectively, he had entered into three several contracts with the railroad company for the erection of a dock on the Maumee River, in the city of Toledo. Under these contracts he had built the dock, and, receiving only partial payment, had filed a claim for a mechanic's lien for the balance. The lot on which the dock was built was a part of the railroad property covered by the first mortgage above referred to. The Circuit Court sustained his claim of lien, and decreed prior payment of the amount due him out of the proceeds of the sale of the railroad property as an entirety. No question is made as to the amount due him by the railroad company for the work he did; but the contention of the appellants is that he is not entitled to priority of payment. His claim of priority depends upon either a legal right given by his mechanic's lien, or an equitable right arising from the construction of the dock and consequent improvement of the railroad property. The master, who reported upon the intervening petition, based his award of priority upon the latter ground, holding that the fact of construction, and consequent improvement of the railroad property, gave an equitable right to priority of payment, while the court, giving the same priority, rested it upon the fact of a mechanic's lien. We think that the views of neither the master nor the court can be sustained, and that it was error to give appellee priority over the mortgagee. It will be noticed, and it is a fact which lies at the foundation of this case, that the contracts for the

construction of the dock were not made till more than three years after the execution and record of the mortgage. The record imparted notice to Hamilton, and to all others, of the fact and terms of the mortgage; and the question is thus presented, whether a railroad company, mortgagor, can, three years after creating by recorded mortgage an express lien upon its property, by contract with a third party displace the priority of the mortgage lien. It would seem that the question admits of but a single answer. Certainly as to ordinary real estate, no one would have the hardihood to contend that it could be done; and there is in this respect no difference between ordinary real estate and railroad property. A recorded mortgage, given by a railroad company on its road-bed and other property, creates a lien whose priority cannot be displaced thereafter, directly by a mortgage given by the company, nor indirectly by a contract between the company and a third party for the erection of buildings or other works of original construction.

It is enough to refer to the decisions of this court. In the case of *Dunham* v. *Railway Company*, 1 Wall. 254, 267, there was presented a question of priority between a mortgagee and a contractor who had expended money and labor in building a railroad, under a subsequent agreement with the company that he should have possession of the road until he was fully paid, and who had never surrendered the possession and the priority of the mortgage was sustained. Upon this point the court observed: "Counsel of respondents concede that the mortgage to the complainant was executed in due form of law, and the case also shows that it was duly recorded on the ninth day of March, 1855, more than eight months before the contract set up by the respondents was made. All of the bonds, except those subsequently delivered to the contractor, had long before that time been issued, and were in the hands of innocent holders. Contractor, under the circumstances, could acquire no greater interest in the road than was held by the company. He did not exact any formal conveyance, but, if he had, and one had been executed and delivered, the rule would be the same. Registry of the first mortgage was notice

to all the world of the lien of the complainant, and in that point of view the case does not even show a hardship upon the contractor, as he must have known when he accepted the agreement that he took the road subject to the rights of the bondholders. Acting as he did with a full knowledge of all the circumstances, he has no right to complain if his agreement is less remunerative than it would have been if the bondholders had joined with the company in making the contract. No effort appears to have been made to induce them to become a party to the agreement, and it is now too late to remedy the oversight. Conceding the general rules of law to be as here laid down, still an attempt is made by the respondents to maintain that railroad mortgages made to secure the payment of bonds issued for the purpose of realizing means with which to construct the road, stand upon a different footing from the ordinary mortgages to which such general rules of law are usually applied. Authorities are cited which seem to favor the supposed distinction, and the argument in support of it was enforced at the bar with great power of illustration, but suffice it to say, that in the view of this court the argument is not sound, and we think that the weight of judicial determination is greatly the other way. *Pierce* v. *Emery*, 32 N. H. 484; *Pennock* v. *Coe*, 23 How. 130; *Field* v. *The Mayor of New York*, 2 Selden, 179; *Seymour* v. *Canandaigua &c. Railroad*, 25 Barb. 284; Red. on Railways, 578; *Langton* v. *Horton*, 1 Hare Ch. 549; *Matter of Howe*, 1 Paige, 125, 129; *Winslow* v. *Mitchell* [*Mitchell* v. *Winslow*], 2 Story, 630; Domat, 649, Art. 5; 1 Pow. on Mort. 190; *Noel* v. *Bewley*, 3 Sim. 103."

See, also, on this general proposition, the cases of *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459; *Dillon* v. *Barnard*, 21 Wall. 430, 440; *Porter* v. *Pittsburg Steel Co.*, 120 U. S. 649, and 122 U. S. 267; *Thompson* v. *Whitewater Valley Railroad*, 132 U. S. 68. Reference may be had to a decision of the Supreme Court of Ohio, the State in which this lien was attempted to be created and enforced, *Choteau* v. *Thompson*, 2 Ohio St. 114, 126, 127, in which the court, speaking of a mechanic's lien, says: "The lien does not override or interfere

with prior *bona fide* liens.  The idea that the builder, or material man, may have a lien upon the house to the exclusion of a mortgagee, or judgment creditor, whose lien attached before the house was erected, altered or repaired, is inadmissible, and could not, in practice, be carried out." And again: " We do not suppose that the law relating to mortgages, or to judgments and executions, was in any way affected by the enactment of the lien law.  And we are of opinion, as before stated, that liens under this law do not, in any case or in any manner, interfere with prior *bona fide* liens." So that if a mechanic's lien could have been placed upon the railroad, or any part thereof, under the Ohio statute, and by the proceedings taken was in fact perfected, it would not operate to displace the priority of the earlier mortgage.

To what extent, if at all, a mechanic's lien could, under the statutes of Ohio in force at the time Hamilton attempted to file his lien, be placed upon a railroad, or any part of it, may be a matter of doubt.  *Rutherfoord* v. *Cincinnati & Portsmouth Railroad*, 35 Ohio St. 559; *Smith Bridge Company* v. *Bowman*, 41 Ohio St. 37; Revised Statutes of Ohio, 1880, sections 3184 and 3185 and sections 3207 to 3211 inclusive; also Laws of 1883, amended sections 3207 to 3211, inclusive, and Laws of 1884, page 126.  It is unnecessary in this case to express any opinion about the matter, for if a mechanic's lien was effected, it was subordinate to the lien of the prior mortgage.  There was no statute in force at the time the mortgage was executed, giving any priority to subsequent mechanic's liens; and by the mortgage the mortgagee took its vested priority, beyond the power of the mortgagor or the legislature thereafter to disturb.

Neither did the fact of the construction of the dock, and the consequent improvement of the mortgaged property, give, as reported by the master, to Hamilton an equitable lien prior in right to the lien of the mortgage, or furnish equitable reasons why the legal priority belonging to the mortgage should be displaced.  It is true cases have arisen in which, upon equitable reasons, the priority of a mortgage debt has been displaced in favor of even unsecured subsequent creditors.

See *St. Louis, Alton &c. Railroad* v. *Cleveland, Columbus &c. Railway,* 125 U. S. 658, 673, in which many of these cases are collected and the equitable principles underlying them stated. But those principles have no application here. The work which Hamilton did was in original construction, and not in keeping up, as a going concern, a railroad already built. The amount due him was no part of the current expenses of operating the road. There was, as to him, no diversion of current earnings to the payment of current expenses.

The distinction is so well expressed by Mr. Justice Blatchford, in giving the opinion of the court in the case of *Porter* v. *Pittsburg Steel Co.,* 120 U. S. 649, 671, that it is sufficient to quote his language: " The claims of the appellees are for the original construction of the railroad. This is not a case where the proceeds of the sale of the property of a railroad, as a completed structure, open for travel and transportation, are to be applied to restore earnings which, instead of having been applied to pay operating expenses and necessary repairs, have been diverted to pay interest on mortgage bonds and the improvement of the mortgaged property, the debts due for the operating expenses and repairs having remained unpaid when a receiver was appointed. The equitable principles upon which the decisions rest, applying to the payment, out of the proceeds of the sale of railroad property, of such debts for operating expenses and necessary repairs, are not applicable to claims such as the present, accrued for the original construction of a railroad while there was a subsisting mortgage upon it. These five appellees gave credit to the company for their work. It was construction work, and none of it was for operating expenses or repairs, and none of it went towards keeping a completed road in operation, either in the way of labor or material. When these claims accrued, the road of the company had not been opened for use. The claims accrued, after the mortgage had been executed and recorded, and after $1,000,000 of the bonds secured by it had been issued and pledged to innocent *bona fide* holders for value. We are not aware of any well-considered adjudged case, which, in the absence of a statutory provision, holds that unsecured floating

debts for construction are a lien on a railroad superior to the lien of a valid mortgage duly recorded, and of bonds secured thereby, and held by *bona fide* purchasers for value. The authorities are all the other way."

It is urged by the appellee, in objection to the force of these propositions, as applied to the facts in this case, that at the time this mechanic's lien was created the legal title was not in the railroad company, but in one George W. Ballou; that as the mortgagor had no legal title, the mortgage created no legal lien; that while by the decree of foreclosure the legal title was transferred to the mortgagor, it was transferred subject to the burden of the mechanic's lien; and the cases of *Williamson, Trustee,* v. *New Jersey Southern Railroad,* 28 N. J. Eq. (1 Stewart,) 277, also 29 N. J. Eq. (2 Stewart,) 311; and *Botsford* v. *New Haven, Middletown &c. Railroad Co.,* 41 Conn. 454, are especially relied upon. But the facts in those cases are very different from those in this. In the New Jersey case, the defendant railroad company had executed a mortgage with the " after acquired property " clause in it, duly recorded. It was also the owner of a large majority of the stock in the Long Branch and Sea Shore Company, and was in possession of and operating the latter company's road. No consolidation in fact of the two companies had taken place; but being in possession of the latter company's road, it had contracted for the building of certain docks, walls and piers, at the terminus of such road. Having failed to make payment for such work, a mechanic's lien was perfected upon the latter company's road. Upon a suit to foreclose the mortgage given by the defendant railroad company, the chancellor, laying hold of the fact that the defendant railroad company was the owner of this large majority of the stock — was in possession of and operating the latter company's road — decreed that such road, with its property and franchises, belonged to the defendant railroad company, and as after acquired property was subject to complainant's mortgage, but subordinate to the mechanic's lien. On review in the Court of Errors and Appeals, as reported in 29 N. J. Eq., *supra,* the decision of the chancellor was sustained, the court saying : " Until

that decree was signed, the right of the complainant in the lands of. the Sea Shore Company under his mortgage was a mere unexecuted equity to have the benefit of such equities as his mortgagor had in the premises, without any legal title in himself or in his mortgagor upon which his mortgage as a conveyance could operate. . . . When the decree of the chancellor was signed, which established the lien of complainant's mortgage on the property of the Long Branch and Sea Shore. Company, Berthoud & Co. had, by force. of the provisions of the mechanic's lien act, acquired a lien on the premises which related back to the commencement of the building, and was entitled to priority over all conveyances, mortgages or encumbrances subsequent thereto. This lien was not displaced by the chancellor's decree, which, in the absence of fraud, could be effective only to bring under the complainant's mortgage the lands of the Sea Shore Company, subject to such liens as were lawfully acquired while the legal estate was in that company. The chancellor's decree adjudging the validity and priority of the claim of Berthoud & Co. should be affirmed." Unquestionably such ruling was correct. The owner of a majority of the stock in a railroad corporation has no title to the road. The title is in the corporation, and he is not the corporation. A mortgage by the owner of such stock is no lien upon the road, and does not prevent the casting of any legal lien upon it. So that, while for the many equitable reasons stated in the opinion, the decree vested the property in the latter road in the defendant railroad company, yet it perfected and transferred that title, subject to all legal liens then existing upon it. As the Court of Errors and Appeals well said, until that decree was signed the right of the complainant, the mortgagee, was a mere unexecuted equity, to have the benefit of such equities as his mortgagor had in the premises.

In the Connecticut case the facts were these: After giving the mortgage the railroad company desired to erect a depot on land adjoining its track. The owner agreed to give the company the land provided it would build a depot. Upon the building a mechanic's lien was filed. The owner had never

made a conveyance. Upon a foreclosure of the mortgage the mechanic's lien upon the building and the ground upon which it was constructed was held prior to the mortgage. The decision was based upon the ground that the full equitable title never passed to the railroad company until the completion of the building, and then it passed subject to the burden of the mechanic's lien. Hence, though after acquired property, and subject to the lien of the mortgage, it was when acquired already burdened with a lien.

But in the case at bar, as appears from the testimony and the decree, only the naked legal title remained in Ballou; the full equitable title was in the railroad company — and in that company before the contracts were entered into. The railroad company had the same title when it made the contracts that it had when the work was done and the decree rendered. Hamilton's contracts were with the railroad company, and of course gave a lien upon the lands only to the extent of the title that the railroad company had. The mortgage being one with words of general description, conveyed land held by a full equitable, as well as that held by a legal, title. Jones on Mortgages, section 138 ; *Massey* v. *Papin*, 24 How. 362; *Farmers' Loan and Trust Co.* v. *Fisher*, 17 Wisconsin, 114; *Lincoln Building Association* v. *Hass*, 10 Nebraska, 581; *Laughlin* v. *Braley*, 25 Kansas, 147. We conclude, therefore, that there is nothing in this fact to justify an award of priority to appellee.

It is further objected by the appellee that the ground upon which this dock was built was never acquired by the company which executed the mortgage, but by a new company into which the mortgagor company passed by consolidation. In view of the condition of the record we are compelled to accept the statement of the court in its decree, which is, that the property was covered by the mortgage in suit. Again, it is urged that a part of the work was done after the receiver was appointed, and by his authority. The report of the master does not sustain this claim ; neither does the account filed by the intervenor for the purpose of securing his mechanic's lien. And while there is testimony tending to show that he did

some work after the appointment of a receiver, there is also contradictory testimony. And even in that part of the testimony which tends to show that work was done after the appointment of a receiver, there is nothing to indicate how much was done, or whether it was done by the authority and direction of the receiver, or simply in completion of a contract theretofore entered into with the company.

These are all the facts we deem it necessary to mention. The decree of the Circuit Court will be

*Reversed, with instructions for further proceedings in accordance with the views herein expressed.*