Swing-, J.
This is an action in this court on error to the judgment of the Court of Common Pleas. The facts out of which this action arose are in bri^f as follows: G. B. Poole and wife, residents of S.pringfield township, Hamilton, county, Ohio, being in debt to defendant in error, Kahn, executed a chattle mortgage to said Kahn to secure said indebtedness ,on August 22, 1892. The property mortgaged consisted of certain household furniture, a buggy, a. carriage, harness and a bay mare. The mortgage provided that if said Poole should remove any of said property from' its location, said Kahn might take possession of the same. That at the time of the execution of said^mortgage the property wás in Springfield township, and said mare was cared for by said Póole: The mortgage was duly filed. Said. Poole, without the knowledge or consent of said Kahn, removed said buggy and carriage and horse from said Springfield township to the stable of said plaintiff in error in the city of Cincinnati, Cincinnati township, said Aylmore being; *393 a livery stable keeper at said place, and said ckattle property was placed in his care and custody', where it remained until May 6, 1893. After condition broken in said mortgage, said Kahn made demand of sáid Poole for the payment of his debt, and afterward made demand of said’Aylmore to deliver to him said property, and said Aylmore refused to deliver the same to said Kahn until he had first paid to him the charges for keeping said horse, which amount so demanded was agreed between the parties as being a fair and reasonable amount. Thereupon’ said Kahn brought suit against said Aylmore in replevin to get possession of the same. This is the case that is here for consideration, and it involves the single legal question whether under these facts a livery stable keeper’s lien is superior to that of a ohattle mortgagee in Ohio.
The question is an interesting one, and one about which the authorities differ. We are of. the opinion that under the law of Ohio as it existed at the time this action occurred, viz., Sec. 3212 R. S., as amended April 18, 1890, 87 Ohio L. p. 222, which is as follows: “A person who feeds or furnishes food and care, or either for any horse *
* * by virtue of any contract or agreement express or implied with the owner or person having possession thereof, shall have a lien therefor to secure the payment of the same upon said animal, ’’this is purely a statutory lien,never having been such at common law; but being made a lien by statute, it should be considered in the same light as common law liens. The common law lien of an innkeeper, it seems to me, is more nearly analogous to that of one who feeds or cares for a horse than any other of the numerous common law liens. In Yol. 1, Jones on Liens, Sec. 499, speaking of this lien, says:
“Thus it has become the settled law with reference to this lien, that there is no distinction between the goods of a guest and those of a third person brought by a guest and *394 in good faith received by the innkeeper as the property of the guest.”
In the 36 Min. p. 303, the court say.- ‘‘Under Gen. St. 1878, c. 90, ss. 16, 17, as the latter is amended by laws of 1885, c. 81, any person keeping any horse at the request of the owner or lawful possessor thereof is entitled to a lien for his just and reasonable charges therefor, and may hold and retain the property until such charges are paid. This is by its terms a law of general application as respects its subject-matter. It expressly provides that keeping at the request of the legal possessor shall be sufficient. This includes the case of a mortgagor lawfully in possession of mortgaged property, as by the express provision of the mortgage the mortgagor was in this instance, and a mortgage made, as was that in the-case at bar, while this statute was in force, is made subject to it as to all other applicable general rules of law. A mortgagee, when he takes a mortgage, takes it in legal contemplation with full knowledge of and subject to the rights of a person keeping the property at the request of the mortgagor or other lawful possessor, to the statutory lien,as he would do to a common law lien.”
This I think is a clear and succinct statement of the law.
In the 21 Ks., at page 220, Judge Brewer, speaking for the court, says:
‘‘Now the lien of this agister is not the true creature of contract; it is created by statute from the fact of the keeping of the cattle. The possession of the agister was rightful; the keeping gave rise to the lien; and such keeping was as much for the interest of the mortgagee as the mortgagor. The cattle were kept alive thereby; and the principle seems to be, that where the mortgagee does not take the possession, but leaves it with the mortgagor, he thereby consents to the creation of a statutory lien for any expenditure reasonably necessary for the preservation or ordinary repair of the thing mortgaged. Such indebtedness really inures to his benefit. The entire value of his mortgage may rest upon the creation of such indebtedness and lien as it is in the case at bar, where the thing mortgaged is live stock, and the lien for food. And *395 while it seems essential that this should be the rule to protect the mechanic or other person given by statute a lien upon chatties for labor or material, the rule on the other hand will seldom work any substantial wrong to the mortgagee.”
As opposed to the law as announced in the two foregoing decisions, quite a number of cases may be found. And in passing on a similar question in a recent case the Supreme Court of Indiana, after reviewing the authorities, say that the weight of authority is opposed to the view taken by the courts in these two cases.
It .may be the court in this case has correctly applied that pet legal phrase, “weight of authority, ” It is not my purpose, however, to review all the authorities on this question, or to enter into any extended discussion on the law appertaining to it- — -as a court of last resort might very properly do; but will content myself by saying that we think the reason of the law is in accord with the decisions supra. That the legislature had the right to make such a law cannot be questioned. That it intended the lien created to be superior to any other lien we think cannot be doubted, and the mortgagee when he took his mortgage took it subject to the law as it then existed, and said law became apart of his mortgage just as much as if written in it; so that it might just as well have been written in his mortgage, that his lien was subject to any lien that the owner or one in possession might create in favor of the keeper for food or care. Such reasoning it seems to us is grounded on well founded legal principles, and accords with natural justice and right.
The law of.1890 has since been changed. See 91 Ohio Laws 133.
The Court of Common Pleas took a view of the law differing from the foregoing, and judgment was rendered accordingly. It follows that the same must be reversed, with costs.
G., Bates, attorney for Plaintiff in error.
S. W. Johnson, attorney for Defendant in error.