MORGAN'S LOUISIANA & T. R. & S. S. CO. v. FARMERS' LOAN & TRUST CO. et al.

(Circuit Court of Appeals, Fifth Circuit. February 25, 1897.)

No. 504.

RAILROAD RECEIVERSHIPS—PREFERRED CLAIMS—MONEY LOANED.

Money loaned to a railroad company on its notes at various times, ranging from about nine months to over four years before the appointment of a receiver, with the purpose and result of keeping its road in safe running order, increasing its property and business, and rendering the same more valuable to the bondholders, and maintaining its credit, is nevertheless not a

debt which is entitled to a preference over the mortgage bonds, upon the appointment of a receiver. Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 79 Fed. 202, followed.

Appeal from the Circuit Court of the United States for the Eastern District of Texas.

The statement in the case of Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co. (No. 503 of the docket of this court) 79 Fed. 202, shows the nature of cause No. 185, consolidated cause No. 198, and cause No. 227 of the docket of the United States circuit court for the Eastern district of Texas.

On September 12, 1885, the Morgan's Louisiana & Texas Railroad & Steamship Company, the intervener in the present cause, filed its intervention in cause No. 185, making substantially the same claim as it makes in the present cause. On March 31, 1887, the present intervener filed its intervention in cause No. 198, claiming substantially as it prays in this cause. On April 30, 1889, the intervener filed its suit on its claim against the Houston & Texas Central Railway Company in the district court of Dallas, Tex., and obtained judgment against said railway company for $1,795,570.81, with interest at 8 per cent. from May 17, 1889, the date of the judgment. On December 16, 1891, the intervener filed its intervention in cause No. 227, which intervention is now before this court. The intervener alleges that the railway company owes it 15 promissory notes, payable on demand, amounting to $1,343,538.53, all bearing 6 per cent. interest from date, except the first note which bears 7 per cent. from date,—which notes are alleged to have been given for loans of money. The intervener alleges:

"That the loans so made by your petitioner to the said defendant company were made at the lowest market rates of interest, and were so made to said defendant company to enable it to retire its floating debt, and to provide for the improvement, equipment, and betterment of its road, to purchase supplies, pay for labor, repairs, operating and managing expenses, and for the proper equipment and useful improvement of its railway, and for other necessary expenses, outlays, and expenditures; by reason whereof the railway of the said defendant company was kept in safe running order, its business and importance increased, and its credit kept up; and that said loans were actually used by the said defendant company for the purposes aforesaid, and that the business and importance of the defendant's railway was thereby increased, and the said railway thereby rendered more valuable to the bondholders under the various mortgages described in the bills of complaint filed in this cause, as well as to all the other creditors of said company. Petitioner further avers that said credit was extended by petitioner to said defendant, and said advances so made to it, in consideration of its promise to pay the same out of the earnings of its railway; and that said indebtedness was and is, in equity and good conscience, a charge superior in rank to the mortgage bonds and coupons issued by defendant, upon the income and property of said railway company; but that said defendant, instead of paying said indebtedness so due to your petitioner out of the earnings of its railway, has entirely failed to pay the same, or any part thereof; and the truth is, and your petitioner so charges, that said defendant has used a large amount of earnings for the payment of coupons upon its bonds based upon the several mortgages described in the bills of complaint herein, although the holders of said coupons are and were entitled to receive payment therefor, only after defendant has paid your petitioner the amounts expended in the manner and for the purposes hereinabove set forth; and that upon a just accounting between your petitioner, the defendant company, and the bondholders, it will be found, as the fact is, that the bondholders have already received large amounts of money from the railway company beyond the amounts to which such bondholders were in any wise entitled, and to the loss, detriment, damage, and injury of your petitioner, which amounts, to the extent of the indebtedness of said railway company to this petitioner, should be made good to your petitioner out of the earnings of the property now in the possession of this court, and out of the proceeds of such property, if the same should be sold by any decree thereof."

The intervener admits receiving certain bonds and other collaterals as security for its claim. The intervener also claims that the mortgage pro-

vided that, if the trustee should acquire possession of the railway under the mortgage, he should pay all floating debts out of the gross earnings. In point of fact, the mortgage contains no such provision. On February 1, 1892, the Farmers' Loan & Trust Company answered the intervention. Moran Bros. and H. K. McHarg, bondholders, who had previously intervened pro interesse suo, pleaded on January 13, 1896, the statute of limitation of two and four years, and answered. The intervention was referred to a master. The report shows that the notes range in date from December 10, 1880, the date of the first note, to May 25, 1884, the date of the last note. The notes are all payable on demand. The intervener received as security for his claim collaterals, from which it realized $842,811.73. The master further reports: "I find that during the year 1884, and for several years prior thereto, the finances of the defendant company were in an embarrassed condition. Its expenses, including fixed charges, interest, etc., exceeded its income for the year 1881, $670,839.42; 1882, $430,177.16; 1883, $570,979.25; 1884, $991,481.44; and it reasonably appears that without the advances made by petitioner, as herein recited (constituting nearly one-third of its floating debt as it existed in 1884), it would not have been able to maintain its credit, and meet its obligations. I find that by the advances so made by petitioner to said defendant railway company, the railways of said defendant company were kept in safer running order, and its property and business increased, and rendered more valuable to the bondholders under the mortgage described in the bill of complaint filed in this cause, as also to all other creditors of the defendant railway company; that said advances were so made to said defendant railway company for the purposes aforesaid, and that without them said company would not have been able to maintain its credit, and meet its obligations, and that said advances were made in consideration of the promise of the defendant railway company to pay the same." The master's report was not excepted to. The circuit court confirmed the report, and dismissed the intervention. The intervener, the Morgan's Louisiana & Texas Railroad & Steamship Company, has appealed.

E. B. Kruttschnitt for appellant.

L. W. Campbell, for appellees Moran Bros. and Henry K. McHarg.

Before TOULMIN, MAXEY, and PARLANGE, District Judges.

PARLANGE, District Judge (after stating the facts as above). This case is fully covered by the views we have expressed in the case of Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co. (No. 503 of the docket of this court) 79 Fed. 202. We find no error in the action of the circuit court, and the decree appealed from is affirmed.