MARYLAND STEEL CO. v. GETTYSBURG ELECTRIC RY. CO.

(Circuit Court, E. D. Pennsylvania. January 27, 1900.)

No. 13.

**1. STREET RAILROADS—FORECLOSURE OF MORTGAGE—PREFERENTIAL CLAIMS.**
Debts created by an electric street-railroad company in rebuilding its power house, which had been destroyed by fire, do not constitute claims to which a court is authorized to give preference in payment from the proceeds of the property of the company when sold under mortgage foreclosure to the displacement of the lien of a prior mortgage covering all the property.

**2. SAME—ESTOPPEL.**
The fact that the bondholders delayed the commencement of foreclosure proceedings for a year after the burning of the power house, and after default in the payment of interest on their bonds, during which time the company rebuilt such house, did not create an estoppel against them in favor of those furnishing labor or material for the structure which entitles the latter to prior payment therefor from the proceeds of the property.

This was a suit in equity for the foreclosure of a mortgage on the property of defendant street-railroad company, in which the property had been sold. Heard on petitions of intervening creditors for preferential payment from the proceeds.

Rudolph M. Schick, for claimants.
John Hampton Barnes, opposed.

DALLAS, Circuit Judge. When a court whose judgments are authoritative declares and applies a principle which had not before been generally recognized, the announcement of that principle is likely to be followed by attempts to extend its operation beyond the bounds of its true limits. This tendency has been so strenuously manifested with respect to the doctrine of Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, that the supreme court has found it necessary to repeatedly say that the discretion to displace vested contract liens is one which should be exercised with very great care, and that the appointment of a receiver vests in the court no general authority to do so. See Miltenberger v. Railroad Co., 106 U. S. 311, 1 Sup. Ct. 140, 27 L. Ed. 117, Kneeland v. Trust Co., 136 U. S. 97, 10 Sup. Ct. 950, 34 L. Ed. 379, and the other cases hereafter cited. Yet, I am now asked to adjudge that the lien created by a duly-recorded mortgage shall be subordinated to the claims of certain creditors of the mortgagor, who have no lien at all, and to award them preferential payment from a fund which has been produced by a sale of the mortgaged property, under an order of this court, in a proceeding to foreclose that mortgage. Bearing in mind that "it is the exception, and not the rule, that such priority of liens can be displaced," and that it may not be done in any case unless there be "special circumstances" to warrant it, the circumstances of this case should be carefully noted. Kneeland v. Trust Co., supra; Miltenberger v. Railroad Co., supra; Thomas v. Car Co., 149 U. S. 110, 13 Sup. Ct. 824, 37 L. Ed. 663. The Gettysburg Electric Railway Company, the mortgagor defendant, being the owner of a railway operated by electricity, made and delivered the mortgage which has been referred to in May, 1893. Thereafter, in September, 1894, its power house (covered by the mortgage) was destroyed by fire. Soon after the fire, some machinery was erected under temporary shelter, and, in April, 1895, the company commenced the construction of a new power house, which was fully completed about August 30, 1895. Several of the claims now under consideration are for materials furnished for this erection. Are they entitled to be preferred to the bonds secured by the mortgage?

In Railroad Co. v. Hamilton, 134 U. S. 299, 10 Sup. Ct. 546, 33 L. Ed. 905, it was held that:

"A recorded mortgage, given by a railroad company on its roadbed and other property, creates a lien whose priority cannot be displaced thereafter directly by a mortgage given by the company, nor indirectly by a contract between the company and a third party for the erection of buildings or other works of original construction."

It has been ingeniously argued that this proposition is inapplicable here, because, as contended, the re-erection of an essential part of a railway plant, which had been accidentally destroyed, cannot be regarded as an original construction, but must be looked upon as being merely the restoration or replacement of such a construction. The fallacy of this contention lies, I think, in its erroneous assumption respecting the sense in which the term "original construction" was used by the court in Railroad Co v. Hamilton. It was not there intended to set in opposition a construction made for the first time, and one which was made to supply the place of a previously existing one;

but to contrast the "erection of buildings" and other like works with works of operation, or of maintenance or repair. Further on it was said:

"The work which Hamilton did was in original construction, and not in keeping up, as a going concern, a railroad already built. The amount due him was no part of the current expenses of operating the road. There was, as to him, no diversion of current earnings to the payment of current expenses." And again: "The equitable principles upon which the decisions rest, applying to the payment, out of the proceeds of the sale of railroad property, of such debts for operating expenses and necessary repairs, are not applicable to claims such as the present, accrued for the original construction of a railroad while there was a subsisting mortgage upon it. These five appellees gave credit to the company for their work. It was construction work, and none of it was for operating expenses or repairs, and none of it went towards keeping a completed road in operation, either in the way of labor or material."

In Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663, a claim for car rent which had accrued prior to the receivership was disallowed, and the following statement in the opinion of the court in Miltenberger v. Railroad Co., supra, was quoted with approval:

"It is easy to see that the payment of unpaid debts for operating expenses, accrued within ninety days, due by a railroad company suddenly deprived of the control of its property, due to operatives in its employ, whose cessation from work simultaneously is to be deprecated, in the interests both of the property and of the public, and the payment of limited amounts due to other and connecting lines of road for materials and repairs, and for unpaid ticket and freight balances, the outcome of indispensable business relations, when a stoppage of the continuance of such business relations would be a probable result, in case of nonpayment, the general consequence involving largely, also, the interests and accommodation of travel and traffic, may well place such payments in the category of payments to preserve the mortgaged property in a large sense by maintaining the good will and integrity of the enterprise, and entitle them to be made a first lien."

From the opinion in Kneeland v. Trust Co., supra, there was extracted the following:

"When a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. * * * It is the exception, and not the rule, that such priority of liens can be displaced."

Having thus referred to these cases, the court, in Thomas v. Car Co., then observed:

"The case of a corporation for the manufacture and sale of cars dealing with a railroad company whose road is subject to a mortgage securing outstanding bonds is very different from that of workmen and employés, or of those who furnish, from day to day, supplies necessary for the maintenance of the railroad."

It is not necessary to extend this examination of the decisions of the supreme court, for they have been fully and very satisfactorily considered by the court of appeals for the Fifth circuit in the case of Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 24 C. C. A. 487, 79 Fed. 202, where it was held that the purchase by a railroad company of about 20,000 tons of steel rails, to replace the old and deteriorated rails with which its tracks were laid, did not create a debt entitled to preference as against bonds secured by mortgage. That court said:

"It is difficult to see how the purchase of 20,000 tons of rails, made under the circumstances stated in the intervener's own pleadings, can be a current debt for operating expenses, made in the ordinary course of continuing business. If the road was in the condition of dilapidation which is inferable from the intervener's averments, it might be sufficient to say, in denying the demand, that the rails were supplied, not as a matter arising in the ordinary course of the railroad's operations, but for the virtual reconstruction of the road. No authorities need be cited to establish the proposition that works of reconstruction are not entitled to preferential payment."

This proposition, and the preceding remark, that there does not appear to have been any case in which such a claim has been, on final adjudication, allowed a preference, I unhesitatingly adopt, and do not perceive that in principle the "virtual reconstruction of the road" of an electric railway company differs from the actual reconstruction of its power house.

In the able and very thorough brief which has been submitted by the learned counsel for the claimants, "the particular equities of this case which are relied on as the basis of the exercise of the extraordinary power in this case" are stated to be:

"That the road was utterly disabled, by the destruction of the power house, from earning money with which to pay interest on its bonds. The bondholders delayed a year before taking possession of the road, and during that time permitted the company to rebuild the power house, and incur the obligations to these claimants. That these claimants were thereby induced to put their labor and materials into the improvement of what was, in effect, the bondholders' property. That the value of that property is enhanced thereby; and that it is inequitable that they should afterwards step in, take possession of the improved property, and refuse to pay for the improvements."

The position here assumed seems to be that, by reason of the "special circumstances" alleged, the mortgage bondholders are estopped in equity from asserting their right to the fund in question, without satisfying the particular obligations referred to. But this position is not tenable. It does not appear that the action of these claimants was in the slightest degree induced by the bondholders, or that any delay of the latter in enforcing their rights in any manner influenced or affected the conduct of the former. Whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens through the interposition of a court of equity; and "the necessity for the supplies does not entitle to preferential payment, unless the supplies are for current expenses in the ordinary course of operation." Kneeland v. Trust Co., 136 U. S. 97, 10 Sup. Ct. 950, 34 L. Ed. 379; Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663; Railroad Co. v. Hamilton, 134 U. S. 296, 10 Sup. Ct. 546, 33 L. Ed. 905; Morgan's L. & T. R. & S. S. Co. v. Texas Cent. Ry. Co., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625; Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 24 C. C. A. 487, 79 Fed. 210. For the reasons which have been indicated, I am of opinion that the claims thus far considered are not entitled to the priority which is asked for them.

The claim of Adam Ertter, amounting to $192, for bricks furnished in the re-erection of the power house, about 10 months before the receivership, must, upon the ground already discussed, be disallowed.

He has, however, also made claim for salary from February 20, 1894, to September 21, 1895, at $500 per annum, amounting in the aggregate to $762. The master allowed this claim, but only for four months next preceding the receivership; and he cannot be said to have erred in this, for the time limit which he applied had been prescribed by an order of this court. I think, however, that this limitation is not now binding upon the court itself, and that, under all the circumstances, the discretion vested in it will be properly exercised by extending the period of allowance to six months, and this will accordingly be done. The further claim of Mr. Ertter,—$60 for rental of room in a building owned by him and used by the company for office purposes,—though rejected by the master, mainly upon the ground that it had not properly come before him, should, I think, be allowed. The business of the company was transacted in this office for about five months before the receiver was appointed, and he continued to use it for some time thereafter. There is no evidence of bad faith in the matter, and, while such an office may not have been absolutely necessary, it was certainly at least a not unreasonable provision for the conduct of its affairs.

The master also held that the claim presented by Craig, Finley & Co., for printing tickets, amounting to $270, could not be allowed by him, because it had not been properly filed with the trustee. This circumstance, however, does not preclude the court from considering the claim on its merits, and I do not think that the tickets in question were so manifestly superfluous and inappropriate to the business of the railway company as to justify the disallowance of the debt incurred in having them printed. I regard them as having been day by day supplies. The claim will be allowed.

Let a decree in accordance with this opinion be prepared.