[No. 28208. Department One. May 23, 1941.]

IDA LAYTON, *Appellant,* v. HOME INDEMNITY COMPANY, *Defendant,* COLUMBIA CLINIC, INC., *Respondent.*[1]

[1]Reported in 113 P. (2d) 538.

*W. H. Sibbald,* for appellant.

*Edgar P. Reid,* for respondent.

STEINERT, J.—This is a contest over certain proceeds of a public liability insurance policy. Plaintiff sought to recover the proceeds by virtue of an assignment of a claim thereto by her daughter, who previously had obtained a judgment for damages for personal injuries against the individual named as the insured in the policy. Defendant Columbia Clinic, Inc., claimed the proceeds by virtue of its alleged statutory lien for hospital services rendered to the injured daughter. Trial by the court, without a jury, resulted in findings and conclusions upon which the court entered judgment establishing and foreclosing the lien, and directing payment of the proceeds to the defendant clinic. Plaintiff appealed.

The facts, as found by the trial court in its memorandum decision and formal findings, are not in dispute. On August 30, 1936, Evelyn Maricelli, while riding in an automobile driven by defendant Dean Golden, was seriously injured through the negligence of the driver. The injured girl was taken to Longview and was placed in a hospital conducted by respondent, Columbia Clinic, Inc. The clinic at all times herein mentioned maintained a staff of licensed physicians, a corps of nurses, and the usual paraphernalia and equipment found in modern hospitals. Miss Maricelli remained in the hospital until February 23, 1937, a period of almost six months, during which time she received constant surgical or medical treatment as required. After her discharge from the hospital, the clinic rendered her no further treatment, but, with reference to her former injuries, did take X-ray pictures of her on October 18th, and November 2nd, respectively, of that year.

At the time of her injury, on August 30, 1936, Miss Maricelli was an employee of Longview Fibre Company, and as such employee was covered by a medical aid contract existing between her employer and the respondent clinic. That contract, however, contained the following provision or exception:

"SERVICES IN CASE OF ACCIDENT. It is further understood that it shall not be the intent of this contract that the contractor [Columbia Clinic, Inc.] will render services either surgical or hospital in cases of injury caused by the negligence of others where the party liable shall have insurance protection."

At the time of the accident, defendant Golden carried public liability insurance under a policy issued by defendant Home Indemnity Company, with limitation of liability in the sum of five thousand dollars for injury to any one person.

On November 30, 1936, Miss Maricelli, while still in the hospital instituted an action for damages against defendant Golden, the driver of the car in which she had been injured. On November 1, 1937, which was about eight months after she had left the hospital, she obtained a judgment against Golden in the sum of six thousand five hundred dollars for general damages, plus her costs amounting to $53.65. Golden thereafter gave notice of appeal from that judgment.

In the meantime, on March 13, 1937, which was after Miss Maricelli had left the hospital, the legislature passed an act (Laws of 1937, chapter 69, p. 236, Rem. Rev. Stat. (Sup.), § 1209-1 [P. C. § 9728-51] *et seq.*), under the provisions of which hospitals, nurses, and physicians rendering services for traumatic injuries were given liens upon claims and rights of action for the recovery of compensation by persons injured through the fault or negligence of others. The act became effective June 9, 1937. Further reference to that statute will be made later.

Subsequent to the entry of the judgment against defendant Golden, negotiations were begun between Miss Maricelli, Golden, and Home Indemnity Company, looking to a compromise and settlement of that litigation. The result was that, on February 18, 1938, Miss Maricelli signed and delivered to Home Indemnity Company a release and discharge of Dean Golden from further liability. At the same time, the indemnity company delivered to her its draft in the sum of $4,053.65 (which included the costs amounting to $53.65), payable jointly to Miss Maricelli and respondent Columbia Clinic, Inc. At that time, the clinic had not claimed or filed any lien for its services. According to the findings of the court, Miss Maricelli *claimed*, at the trial below, that she was told by Home Indemnity Company, at the time of the delivery of the draft to

her, that the clinic, respondent herein, would not claim any part of the money, and would endorse the draft, but that it was necessary to make the clinic one of the payees in the draft in order to protect the indemnity company. The trial court did not find as a fact, however, that such representations had been made.

When the draft was presented to respondent clinic, it refused to endorse the instrument unless payment were made for the medical and hospital services which it had rendered to Miss Maricelli. Further, the clinic then announced, for the first time, that it claimed a lien on the judgment in the damage action and upon any settlement thereof. In the afternoon of the following day, February 19, 1938, Miss Maricelli returned the draft to Home Indemnity Company, and demanded another draft in its place, to be made payable to her alone. In the meantime, on the morning of the same day, the clinic had filed and caused to be recorded its claim of lien for services in the sum of $1,498.80. There is no contention here on the part of appellant that the amount of respondent's claim is unreasonable.

As a result of further negotiations and agreement between Miss Maricelli and Home Indemnity Company, during the afternoon of February 19, 1938, the indemnity company delivered to her its draft in the sum of $3,053.65 (which included the costs amounting to $53.65), and retained the balance of one thousand dollars, being twenty-five per cent of the basic amount of the settlement, to protect the indemnity company against any lien which the respondent clinic might assert. Under the terms of the lien statute above mentioned, the amount of such lien may not exceed twenty-five per cent of the amount of the award, judgment, or settlement to which it relates.

On February 21, 1938, Miss Maricelli assigned to her mother, appellant herein, her claim to the balance of

one thousand dollars owing under the compromise settlement. Appellant, on March 12, 1938, instituted this action against Home Indemnity Company alone to recover that amount. Later, Columbia Clinic, Inc., and Golden were brought in as additional parties. Golden, however, defaulted, and the indemnity company, upon paying the amount retained by it into the registry of the court, was dismissed from the action. The cause then proceeded against Columbia Clinic, Inc., alone, with the result, as already stated, that its alleged lien was upheld, and the money deposited with the court was ordered to be paid to it.

For the convenience of the reader, we summarize, in their chronological sequence, the above events: August 30, 1936, Evelyn Maricelli was injured, and entered the hospital; November 30, 1936, she instituted suit against Golden; February 23, 1937, she was discharged from the hospital; March 13, 1937, the legislature passed the hospital and medical lien act; June 9, 1937, the lien act became effective; October 18, 1937, Miss Maricelli was X-rayed by respondent clinic; November 1, 1937, she obtained judgment against Golden; November 2, 1937, she was again X-rayed by respondent; February 18, 1938, she executed a release of Golden, and received a draft from Home Indemnity Company payable to herself *and* respondent; on the same day, respondent refused to endorse the draft, and orally claimed a lien for its services; February 19, 1938, in the forenoon, respondent filed its lien; on the same day, in the afternoon, Miss Maricelli received the second draft, in the reduced amount, and the indemnity company retained the balance amounting to one thousand dollars; February 21, 1938, Miss Maricelli assigned her claim for the one thousand dollars to appellant; March 12, 1938, appellant instituted the present action.

The lien statute here in question provides as follows:

"SECTION 1. Every operator of a hospital and every duly licensed nurse, practitioner, physician and surgeon rendering service for any person who has received a traumatic injury shall have a lien upon any claim, right of action and/or money to which such person is entitled against any *tort feasor* and/or insurer of such *tort feasor* for the value of such service, together with costs and such reasonable attorney's fees as the court may allow, incurred in enforcing such lien: . . . *Provided, further,* That all the said liens for service rendered to any one person as a result of any one accident shall not exceed twenty-five (25) per centum of the amount of an award, verdict, report, decision, decree, judgment or settlement." (Italics original.)

"SEC. 2. No person shall be entitled to the lien given by the preceding section unless he shall, within twenty (20) days after the date of such injury, *or, if settlement has not been a[e]ffected with and payment made to such injured person, then at any time before such settlement and payment,* file for record with the county auditor of the county in which said service was performed, a notice of claim stating [certain prescribed details.]" (Italics ours.) Laws of 1937, chapter 69, p. 236, §§ 1, 2 (Rem. Rev. Stat. (Sup.), §§ 1209-1, 1209-2 [P. C. §§ 9728-51, 9728-52]).

Appellant's first contention is that respondent's lien was not filed in time. This contention is predicated upon the argument that the release executed by Miss Maricelli on February 18, 1938, and the acceptance by her, at that time, of the original draft, constituted settlement and payment, and that such settlement and payment took place *before* respondent had filed its lien as required by statute. Respondent's lien, it will be recalled, was not filed until the following day, February 19th.

The contention and argument are not sound, for several reasons. In the first place, if the original draft

above referred to be considered as settlement and payment, it was not such a settlement and payment as would cut off all rights to file lien claims under the statute. It will be observed that the statute requires only that the notice of claim for lien be filed prior to the time that settlement is effected with, *and* payment made to, *the injured person*. Although the original draft was delivered to Miss Maricelli personally, it was not in settlement and payment of her claim alone, but for that of respondent as well, because the draft was made payable to both parties jointly. In other words, the full amount of the draft was neither intended for, nor received by, her alone. The very theory of appellant's action throughout has been that Miss Maricelli *has not been paid* the full amount of the settlement. Hence, in so far at least as she had not received payment, the time for filing liens had not expired.

In the second place, if the original draft *be* considered as settlement with, and payment to, Miss Maricelli *alone,* she repudiated it by returning the draft, demanding and accepting another, and agreeing to the conditions under which the second draft was issued. At that time, however, respondent's lien had been filed.

In the third place, so far as the amount here involved is concerned, namely, one thousand dollars, there has never been complete settlement and payment even as to Miss Maricelli; on the contrary, a portion of the total amount agreed upon as settlement was specifically withheld to await the judgment of the court in this action. Since the lien *was* filed prior to payment of the amount here in question *to the injured person,* as contemplated by the statute, the filing was timely.

Appellant's second contention, and the real problem in this case, may be stated in the form of the follow-

ing question: Is the 1937 lien law retroactive, so as to give the hospital a lien for services rendered prior to the passage of the act? The problem is wholly one of statutory construction.

The essence, or vital element, of a statute is the intention of the legislature which enacted it, and the object or purpose of all construction or interpretation of statutes is to ascertain, if possible, and to give effect to, the intention of the lawmakers. *Featherstone v. Dessert,* 173 Wash. 264, 22 P. (2d) 1050; *McKenzie v. Mukilteo Water Dist.,* 4 Wn. (2d) 103, 102 P. (2d) 251; 2 Lewis' Sutherland, Statutory Construction (2d ed.), 693, § 363; Crawford, Statutory Construction (1940), 244 *et seq.,* §§ 158-160.

In construing a statute, resort must first be had to its context and subject matter (*Behrens v. Commercial Waterway Dist. No. 1,* 107 Wash. 155, 181 Pac. 892, 185 Pac. 628; *State ex rel. Port of Seattle v. Department of Public Service,* 1 Wn. (2d) 102, 95 P. (2d) 1007), and when, from the language of the statute, the legislative intent is clearly apparent, it must prevail (*Shorts v. Seattle,* 95 Wash. 531, 164 Pac. 239; *Shelton Hotel Co. v. Bates,* 4 Wn. (2d) 498, 104 P. (2d) 478).

The difficulty with which we are here faced, however, is that, when we endeavor to apply the principles just stated, we are brought no nearer to the solution of the problem in the instant case. Resort to the context and language of the statute itself discloses neither express statement nor language from which it can be deduced whether or not the lien was intended to apply to services rendered prior to the passage of the act. Upon that specific question, the statute is silent and inscrutable. Had the legislature expressed itself upon that phase of the subject, this case would in all probability not be here. We must, therefore, resort to other aids to statutory construction.

■ It is now the universally accepted rule that retroactive legislation is looked upon with disfavor, and that statutes will be construed to be effective *in futuro* only, unless a contrary intent clearly appears.

"The general rule is that statutes will be construed to operate prospectively only, unless an intent to the contrary clearly appears. It is said 'that a law will not be given a retrospective operation, unless that intention has been manifested by the most clear and unequivocal expression.' And in another case [*Bauer Grocer Co. v. Zelle*, 172 Ill. 407, 50 N. E. 238; *Cleary v. Hoobler*, 107 Ill. 97]: 'The rule is that statutes are prospective, and will not be construed to have retroactive operation unless the language employed in the enactment is so clear it will admit of no other construction.' The rule is supported by numerous cases. [Citations given]. . . . It is always presumed that statutes were intended to operate prospectively, and all doubts are resolved in favor of such a construction." 2 Lewis' Sutherland, Statutory Construction (2d ed. ), 1157, § 642.

See, also, to the same effect, Crawford, Statutory Construction (1940), 562, § 277.

This court has frequently expressed itself as being in accord with the rule stated in the foregoing quotation. *Graves v. Dunlap*, 87 Wash. 648, 152 Pac. 532, Ann. Cas. 1917B, 944, L. R. A. 1916C, 338; *State ex rel. Chapman v. Edwards*, 161 Wash. 268, 295 Pac. 1017; *State ex rel. French v. Seattle*, 187 Wash. 58, 59 P. (2d) 914; *Earle v. Froedtert Grain & Malting Co.*, 197 Wash. 341, 85 P. (2d) 264; *Seattle v. King County*, 3 Wn. (2d) 26, 99 P. (2d) 621; *Longview Co. v. Lynn*, 6 Wn. (2d) 507, 108 P. (2d) 365; *In re Cascade Fixture Co.*, 8 Wn. (2d) 263, 111 P. (2d) 991. In each of the cases just cited, the rule in question was approved in express language.

■ If this rule, so firmly and so repeatedly stated, be applied to the instant case, the answer to the ques-

tion presented must be that the statute under consideration does not operate retroactively, and, hence, that respondent clinic has no lien, upon the proceeds of the settlement, for services rendered prior to the effective date of the medical lien law. This conclusion is directly supported by the case of *National City Bank v. Henderson,* 59 Wash. 354, 109 Pac. 1038, wherein it was held that a statute creating an agister's lien for the care and keep of livestock did not have retroactive effect, and, hence, conferred no right of lien for services rendered prior to the effective date of the statute.

Respondent, however, contends, and the trial court was of the opinion, that the medical lien statute is remedial in its nature, and that, for that reason, the instant situation does not fall within the rule above announced. It may be conceded that the statute is remedial in its nature, in the sense that it affords an additional remedy for the collection of a debt. However, the medical lien statute is in derogation of the common law, and, therefore, under the rule obtaining in this state, it is to be strictly construed, and its operation will not be extended for the benefit of those who do not clearly come within its terms. *De Gooyer v. Northwest Trust & State Bank,* 130 Wash. 652, 228 Pac. 835; *DeLong v. Hi Carbon Coal Co.,* 155 Wash. 265, 283 Pac. 1079. Although the statute was enacted for the protection of hospitals, nurses, and physicians, generally, it does not say, nor does it intimate, that those who performed services prior to its enactment were nevertheless entitled to its protection.

As was stated at the outset, the constant question before us is whether or not the legislature *intended* to include as lienable items services that had been rendered prior to its effective date. In the absence of any light from the statute itself upon that subject, our only safe course is to follow the rule to which this court has

definitely committed itself, and to hold that, since by its terms no contrary intent clearly appears, the statute is to be given prospective effect only.

In this connection, however, it is to be noted that some of the services rendered by the clinic were performed *after* the statute became effective. Two X rays were taken, in October and November of 1937, subsequent to the effective date of the lien act. Those services were wholly segregable from the services rendered at the hospital prior to the effective date of the act. We see no reason why the statute should not be held applicable to the latter portion of services rendered, and we therefore sustain the lien to that extent.

The judgment will be reversed, with direction to the trial court to determine the value of the services rendered subsequent to the effective date of the 1937 act, and to enter judgment in accordance with the views herein expressed.

ROBINSON, C. J., BLAKE, MAIN, and DRIVER, JJ., concur.