Davies, J.
 

 At common law, the defendants were liable for all losses of the property of their guests
 
 infra hospitium.
 
 The ■legislature of this State, in 1855, for reasons which might easily be suggested, and which were satisfactory to them, modified'this strict0 liability of the common law, which had been uniformly enforced -by the courts with rigidity, and its application in many cases involved peculiar hardship.
 

 The act of 1855 provides that whenever the proprietor of any hotel shall furnish a safe in the office of such .hotel, or other convenient place, for the safe keeping of any money, jewels, or ornaments belonging to the guests of such hotel, and shall notify the guests thereof by posting a notice, stating the
 
 *113
 
 fact that such safe is provided in which such money, jewels or ornaments may be deposited, in the room occupied by such guest, in a conspicuous manner, and such guest shall neglect to deposit such money, jewels, &e., in such safe, the proprietor ■of such hotel shall not be liable for any loss of such money, jewels, &c., sustained by such guest by theft or otherwise.
 

 It is seen from an examination of this statute, that two things are to be done by the proprietor of the hotel to relieve himself from his common law liability:
 

 1st. He is to provide a safe in his office or other convenient place in the hotel, for the safe keeping of the money, &c.
 

 2d. He is to notify the guests thereof, by posting a notice in a conspicuous place in the room or rooms occupied by the guests, stating the fact that such safe was provided in which such money, &c., might be deposited.
 

 There is no doubt that in this hotel the proprietors had provided the safe in their office for the safe keeping of the money of their guests. So far they had undeniably conformed to the statute.
 

 The notice, by posting in the room, required by the statute, was not given, as found by the- jury; but the jury has found as a fact that this plaintiff had actual and full notice that such safe was provided for that purpose.
 

 The actual notice given to the plaintiff was far more fall and ample than the constructive one provided for in the act of the legislature. The notice to be posted by the act was only to state the fact that such safe was provided in which such money, &c., might be deposited. That was all the constructive notice the act required. It is easy to perceive that if such notice was brought to the attention of a stranger,' he might well fail to perceive that there was anything in it changing or modifying the duties or liabilities of the proprietor, in respect to the safety of the property of his guest. He would see from this statutory notice, if he read it, that a safe was provided in which his money might be deposited, but it would fail to inform him of any consequences attending his not availing himself of its use. The notice actually given in the present ease distinctly broughtto- his
 
 *114
 
 mind not only the fact of the safe being provided, but the reasons of such provision, and the important fact that if the guest did not avail himself of this place of safety for his money, in case of its loss, he could have no claim upon the proprietor of the hotel. The actual notice, therefore, given in this case, was far more satisfactory and ample than the constructive one required by the statute; and the question is, whether the defendants were protected by the act, in giving this notice and omitting to post that prescribed by the statute ? There can be no controversy, that an actual notice is far more certain to bring knowledge of a fact to a party than constructive notice. We certainly must be permitted to look at the object' of the legislature in passing this act, and in making the provision as to notice which it contains. It was certainly to limit the liability of hotel keepers and to provide means by which they might restrict it. It was also the object of the legislature to provide for the security of the guest, and not to deprive him of the rights secured to him by the common law without special notice of the provisions of this act. It must have been seen by the framers of the act, that it would have been a difficult matter in a large hotel, receiving three or four hundred guests daily, to give personal notice to each guest of the requirements of this act, and to preserve evidence of such notice. The legislature, therefore, in addition to the knowledge which every man is presumed to have of the law, thought proper to provide in this particular case, that the putting of a notice in a conspicuous place in the room occupied by the guest, stating the fact that a safe was provided in which his money might be deposited, should be
 
 prima facie
 
 evidence of notice to him of the act. The mode and manner of ghdng the notice was, therefore, clearly for the benefit of the hotel keeper. It is easily seen that the chances of its attracting the attention of the guests were small; and even if it did, and stated only what the act requires, it would fail to inform him of the advantage secured by the act, and the consequence which would follow in .case he did not avail himself of the use of the safe.
 

 . We think, therefore, the actual notice given in this case
 
 *115
 
 contained more Ml information than 'the statutory notice, and that the object and purpose of the act have been more than complied with. We do not see that the precise mode of giving the notice specified in the act, and in the precise form prescribed by it, are essential to the protection of the defendants. We must look at the substance of things, and not be led away by forms. Under our recording acts, the recording of a deed or mortgage is notice to all subsequent purchasers or incumbrances, but no principle is more familiar than that actual notice of a deed or mortgage unrecorded is quite as effective and far more satisfactory than record notice. One is constructive, the other actual. Previous to 1844, in proceedings to foreclose mortgages by advertisement, the notice of sale was required to be given by publication in a newspaper printed in the county, and by affixing a copy- of such notice on the outer door of the court house of the county in, which the lands to be sold were located. In
 
 Stanton
 
 v.
 
 Cline
 
 (1 Kern., 198), Gardiner, Ch. J., in delivering the opinion of this court, says: The publication in the newspaper and the posting on the court house door were the equivalents .to a personal service. If so, it certainly follows that if personal service, on any person affected by the proceeding, had been made of the notice, it would have dispensed with proof of the statutory notice. We think that the actual notice given in the present case, afforded all the protectian to the defendants which they would have had if the statutory-notice had been posted as required by the act of
 
 1855.
 

 But we think there is another ground, equally satisfactory, upon which the judgment of the court below can be sustained. The jury have found as a fact in this case, that the plaintiff was himself guilty of negligence under .the circumstances in not availing himself of the notice given to him, to deposit, his valuables in the safe provided by the defendants.
 

 The judge charged the jury “ that if the information communicated to'the plaintiff was communicated by the authority of the defendants, and was so communicated as that it was understood by the plaintiff so that he had Ml notice that there was a safe in the office appropriated to the safe custody of valuables,
 
 *116
 
 it was negligence, considering the amount of money he had, not to have intrusted it to the safe.”
 

 ■ The jury, in finding that the plaintiff was guilty of negligence, must have found all the facts which the judge had told them were necessary to be proved to justify such a finding; and having ascertained the facts, they drew from- them the exact ■conclusion which the judge had instructed them to draw. It follows, if it be the law that the loss of the plaintiff, having been caused by his own negligence, is a bar to his recovery, that in the present case such negligence having been established .as a,fact, he cannot recover.
 

 It is said in
 
 Calye’s case
 
 (8 Rep., 33), that if the innkeeper require his guest that he will put his goods in such a chamber .under lock and key and then he will warrant them, otherwise not, and the guest lets them lie in an outer court, where they are taken away, the innkeeper shall not be charged, for the fault is in the guest. In
 
 Richmond
 
 v.
 
 Smith
 
 (8 Barn. & Cress., 10.) Lord Tenterden placed the liability of the innkeeper, upon the common law rule, that where a traveler-brings goods to an inn the landlord is responsible for them. And he says, “if it had been intended by the defendant not to be responsible unless his guests chose to have their goods placed in their bedrooms or some other place selected by him, he should have said so.” The Chief Justice deems the situation of the landlord precisely analogous to that of a carrier. Bayley, J., said that “ an innkeeper’s liability very closely resembles that of a carrier. He is
 
 prima facie
 
 liable for any loss not occasioned by the act of God, or the king’s enemies, although he may be exonerated when the guest chooses to have the goods under his own care.” These eases are cited with approbation by Nelson, Ch. J., in
 
 Piper
 
 v.
 
 Manny
 
 (21 Wend., 284). Applying these principles to the facts of the present case, where it is apparent that the defendants wished to have the plaintiff’s money put in a place of safety, which he refused to permit, but chose to have it under his own care, the defendants are exonerated, and the plaintiff must suffer the consequences of his own folly, - . •
 

 
 *117
 
 The ground of the defendants’ liability has always been likened to that of a common carrier. The rules of law applicable to such a condition of parties have always been maintained with firmness by the courts, and certainly by those of this State.
 
 (Dorr
 
 v.
 
 The New Jersey Steam Navigation
 
 Company, 1 Kern., 485.) Yet it is also the well settled law of this State, ■that if the plaintiff’s negligence has caused or contributed to the loss or injury, an action against the carrier cannot be main» tained.
 
 (Tonawanda Railroad Company
 
 v.
 
 Munger,
 
 5 Denio, 255;
 
 S. C.,
 
 4 Comst., 349;
 
 Shepherd
 
 v. Hees, 12 Johns., 434;
 
 Bush
 
 v.
 
 Brainerd,
 
 1 Cowen, 78;
 
 Brownell
 
 v. Flagler, 5 Hill, 282;
 
 Cook
 
 v.
 
 Champlain Transportation Company,
 
 1 Denio, 99;
 
 Haring
 
 v.
 
 New York and Erie Railroad Company,
 
 13 Barb., 9.)
 

 It* being an established fact in this case that the plaintiff was guilty of negligence in not availing himself of -the place of safety provided by the defendants for the safe keeping of his money, it follows that he cannot maintain this action.
 

 The judgment of the Superior Court should therefore be affirmed.
 

 Denio, Selden, Bacon and Wright, Js., concurred on both the grounds stated by Davies, J. Comstock; Ch. J., Clerks and Welles, Js., did not agree that a verbal notice could be substituted for the posting of a written or printed one as required by the statute, but concurred on the ground thát the plaintiff’s negligence discharged' the defendants indepen» dently of the statute.
 

 Judgment affirmed.