# Lanier *v.* Youngblood.

73  587
93  343

*Action by Guest against Proprietor of Public Hotel or Inn for Money and Jewelry stolen.*

1. *Liability of unlicensed innkeeper for goods stolen.*—Where a person in this State holds himself out to the public as the keeper of a public inn or hotel, although not licensed as such, and refuses or fails to make a special written contract with his guest, as required by the statute (Code, 1876, § 525), he must be held chargeable with the liabilities imposed by the common law touching the loss of personal property belonging to the guest; and when sued for such loss, he can not be heard to say that he was not a licensed keeper of a hotel or inn.

2. *Liability of innkeepers at common law for goods stolen.*—Under the principles of the common law, an innkeeper is liable to his guest for the loss by theft of personal property of every kind, *infra hospitium,* which the guest finds it convenient to carry about him, including money, jewelry, or other valuables devoted to use or ornament, unless such loss was superinduced by the proximate contributory negligence of the guest.

3. *Same; rule as to contributory negligence on part of guest.*—While the general rule prevails, that contributory negligence on the part of the guest will exonerate an innkeeper from liability for loss of goods occasioned by theft, it is not every slight negligence of the guest which will exonerate the innkeeper from liability, nor is it required that the negligence should be gross, or such as evinces a want of good faith on the part of the guest.

4. *Same.*—But the true rule, in such cases, is, that the want of ordinary care, or of such care as a prudent man may reasonably be expected to exercise under like circumstances, on the part of the guest, is sufficient to defeat a recovery against the innkeeper, where it appears that such negligence proximately contributed to the loss, and that the loss would not otherwise have happened.

5. *Same; contributory negligence; when a question for the court.*—In such case, the question of negligence *vel non* is one of fact for the determination of the jury, in all cases of doubt, either where the facts are disputed, or where different minds may reasonably draw different inferences or conclusions; but it is one of law, to be decided by the court, where the facts are undisputed, and the inference to be drawn from them is clear and certain.

6. *Same; statute providing mode by which innkeeper may protect himself from liability, must be strictly construed.*—The statute providing that an innkeeper may protect himself from liability to his guest for loss of money, etc., by keeping an iron chest, or other safe depository for valuable articles belonging to his guests, and by posting on his doors, and other public places in his house, notices to his guests, that they must leave their valuables with him for safe-keeping, etc. (Code, 1876, §§ 1549–51), being in derogation of the common law, must be strictly construed, and can not be extended, in its operation and effect, by doubtful implication; and thus construed, it requires that the notice shall be posted on the doors of all rooms occupied by guests.

7. *Same; whether actual notice exonerates innkeeper, quære; when actual notice not shown.*—It *seems* that the strict construction required to be

[Lanier v. Youngblood.]

placed on the statute excludes actual notice on the part of the guest, by failing to expressly provide for it; but whether this is the true construction of the statute, is not decided, as from the facts of this case actual notice can not be imputed to the guest, it merely being shown that, at some time within the twelve months preceding the loss, while a guest at the hotel, he had observed and read the printed notices required by the statute, in other rooms of the hotel.

8. *Same; what does not constitute contributory negligence.*—Where the lock on the door furnished the guest was out of repair, and no other fastening was provided, contributory negligence can not be imputed to him, because he slept in the room without fastening the door, or because, knowing the condition of the door in this regard, he failed to notify the innkeeper thereof.

APPEAL from Montgomery Circuit Court.

Tried before Hon. THOS. H. WATTS, SR., Special Judge.

This was an action by William Youngblood against Clifford A. Lanier, as the keeper of a public hotel or inn in the city of Montgomery, known as the "Exchange Hotel," to recover damages for the loss of money and jewelry, alleged to have been stolen or wrongfully taken and carried away from plaintiff's room, while he was a guest at said hotel. The pleadings, other than the complaint, are not set out in the record. The trial resulted in a verdict and judgment for the plaintiff, from which the defendant prosecuted this appeal.

As the evidence introduced on behalf of the plaintiff tended to show, on 10th November, 1881, the plaintiff, as a transient guest, registered at said "Exchange Hotel," a "house kept by defendant for the entertainment of boarders, lodgers and transient persons or guests for pay," when a room was assigned to him, on the door of which was a lock, "but the fastening to hold the bolt of the lock was off." The condition of the fastening was discovered by him on that night, but he did not call the defendant's attention to the fact. In this room the plaintiff slept that night, leaving it in the morning. On the second night of his stay, coming in late, and asking the clerk for the key of his room, he was informed that it was in the door of the room. On going to his room, the same he occupied the first night, the plaintiff found no key in the door, but, without informing the defendant or his clerk of this fact, or of the fact that there was no fastening for the bolt of the lock, he undressed himself and went to bed, leaving the door of the room shut, but not locked or bolted. On retiring for the night, he placed his pantaloons, vest and shirt on a chair in the room, leaving in the pockets of the vest sixty dollars in money, and a gold watch, to which was attached a gold chain, and in his shirt an opal stud, and cuff and colar buttons, the value of all which was shown. On waking the next morning, he discovered that his shirt, with the stud, cuff and colar buttons, his watch and chain, and the money in his vest pocket, "had been stolen." It

[Lanier v. Youngblood.]

was also shown on behalf of the plaintiff, that no "notice of any kind whatever was posted on the door of said room, when he occupied it."

"The defendant introduced evidence showing that during the time plaintiff was at said Exchange Hotel, in November, 1881, there was a public fair going on, a large number of strangers were in the city, and it was generally known there were pickpockets and burglars in said city; that neither the defendant nor his clerk knew that said fastening for the bolt of the lock was off, and on the morning said articles were stolen, but after they were stolen, said fastening with the screws was found on the mantle-piece in said room; that the defendant, for several years prior, and up to, and at the time said articles were stolen, had posted and endeavored to keep posted, and, so far as he knew, kept posted on the doors, and in the office and other public places in said Exchange Hotel, notices of the kind required by section 1549 of the Code of 1876, and he knows that said notices were kept posted on the doors generally, and in the office and other public places in said Exchange Hotel; and that one of said notices had been posted on the door of the room occupied by plaintiff, and neither defendant nor his clerk knew that said notice had been removed from the door of said room, until after said articles were stolen; that the defendant, for several years prior to, and at the time said articles were stolen, had and kept in the office of said Exchange Hotel an iron safe for the deposit of valuable articles belonging to his guests and customers; that a register was kept at the office of said Exchange Hotel, which was presented to the guests and customers on their arrival, on which to write their names, being the same register on which plaintiff wrote his name, on his arrival in November, 1881; that, at the top of each page of said register, and at the top of the page of said register on which plaintiff wrote his name, on his arrival in November, 1881, there were printed words, under which was a blank space for the guests and customers to write their names." These printed words consisted of the names of the hotel and its proprietor, a notice that he would not be responsible for valuables unless deposited at the office, and of the following: "We, the undersigned, on our part, hereby specially contract with the proprietor of the Exchange Hotel for board, on terms agreed upon." It was further shown "that above these printed words, and on each side thereof, there were printed mercantile advertisements, some in large letters; that the special attention of plaintiff was not called to these printed words at the time he wrote his name on said register, on his arrival in November, 1881; but plaintiff testified that he saw that something was printed at the top of the register, but did

[Lanier v. Youngblood.]

not read it; but that during the twelve months previous to November, 1881, he had stopped at said Exchange Hotel several different times, on each of which occasions he wrote his name on said register, and on said occasions he was assigned to, and occupied different rooms in said Exchange Hotel, on the doors of which rooms were kept posted notices, such as are required by section 1549 of the Code of 1876, which notices plaintiff had observed, and from these notices knew, that a safe was kept in the office, but he had never observed the safe." It was further shown "that, since the passage of the act which constitutes sections 522–525, inclusive, of the Code of 1876, the defendant has never taken out a license to keep said Exchange Hotel, but has paid each year the tax, State and county, on the net income of his said business, and has kept a register, with the printed words at the top of each page," as shown above, "on which the guests and customers wrote their names on arrival; and that no municipal tax on said income has ever been required of him."

This being all the evidence, the court, at the plaintiff's written request, charged the jury that if they believed the evidence, they must find for him, and assess his damages at the value of the articles lost, with interest on that value from the time of the loss to the time of the trial. To this charge the defendant excepted, and it is here assigned as error.

CLOPTON, HERBERT & CHAMBERS, for appellant.

ARRINGTON & GRAHAM, contra.

SOMERVILLE, J.—The plaintiff in the present action seeks to charge the defendant, Lanier, as keeper of the Exchange Hotel, in the city of Montgomery, for the loss of about sixty dollars in money, a watch and chain, and other articles of jewelry of small value, worn about his person, which are shown to have been stolen during the night, from a room in the hotel occupied by the plaintiff, who was a transient guest or customer.

It is first insisted for the defendant, that, inasmuch as the evidence shows that he had never taken out a license, as keeper of a regular inn or hotel under the provisions of the statute (Code, 1876, §§ 522–525), he can not, for this reason, be held to the common law liabilities of this class of bailees; but is to be regarded only as the keeper of a house or place of entertainment for boarders or lodgers, and, therefore, freed from the more severe liability attaching to the keepers of inns or hotels. This precise question was raised and fully considered by this court in the case of Beale v. Posey, 72 Ala. 323. It was there held that, under a proper construction of the

[Lanier v. Youngblood.]

several statutes of this State, if the keeper of an unlicensed house of entertainment fails to make a special contract with his guest as required by statute, he elects to assume the common law liability of an innkeeper, and when sued for the loss of goods belonging to the guest, he can not be heard to say that he was not a licensed innkeeper. The known purpose of the act of March 22, 1875, now embodied in sections 522–525 of the present Code, was to allow to innkeepers a larger liberty in the selection of their guests than was accorded to them under the stringent rules of the common law, and to thus obviate the evil effects of unwise congressional legislation, enacted under a power by which it was sought to arrogate to the General Government the right to regulate mere social matters of local and private concern in the several States. We regard the principle as settled by the above authority, that if persons in this State hold themselves out to the public as keepers of inns or hotels, even though unlicensed as such, and refuse or fail to make special written contracts with their guests; they must be held chargeable with the liabilities imposed by the principles of the common law touching the loss of personal property belonging to their guests or customers, except so far as these principles may have been modified by statute.—*Beale v. Posey, supra*; Code, 1876, §§ 1549–1551; Code, § 522.

The common law liability of innkeepers is too well established to need any extensive discussion at this late day by the courts, so far, at least, as the particular facts of this case are concerned. There is a conflict, it is true, among the authorities on one point. This liability is stated by many to be commensurate with that of the common carrier, who is regarded as an *insurer*, being responsible for losses of every character, except such as were occasioned by "the act of God, the public enemy, or the party complaining."—2 Parson's Contr. 146 ; 2 Story's Contr. § 909 ; Chitty on Contr. 675 ; Saunders on Negl. 212. By other writers, innkeepers are held to be excused for losses occasioned by *vis major*, or irresistible force, such as robbery or fire.—2 Kent's Com. 593 ; Wharton on Negl. § 678 ; Redf. on Car. § 596 ; Story on Bailments, § 472. But however this may be, nothing is better settled than that they are liable, under the rules of the common law, for losses occasioned by *theft*, unless superinduced by the proximate contributory negligence of the owner.—2 Kent's Com. 592 ; *Mason v. Thompson*, 20 Amer. Dec. 471 ; *Houser v. Tully*, 1 Amer. Rep. 390 ; *Dunbier v. Day*, 41 Amer. Rep. 772 ; Story on Contr. § 748.

It may be considered as the fair result of all the cases, that this liability covers all the personal property of every kind, *infra hospitium*, which the traveller or guest finds it convenient to carry about him, including money, jewelry or other valuables

[Lanier v. Youngblood.]

devoted to use or ornament.—Redf. on Carriers, 458; *Ramaley v. Leland* (43 N. Y. 539), 3 Amer. Rep. 728. How much further the principle extends, is not a question in this case. *Clute v. Wiggins*, 7 Amer. Dec., *note*, p. 452–454; *Wilkins v. Earle*, 4 Amer. Rep. 655.

In addition to other defenses which are authorized to be set up by an innkeeper, in excuse of loss of the guest's goods, is the *fraud or negligence of the guest himself*, which may be classed under the head of *contributory negligence*. This constitutes, according to the better view, an established exception engrafted upon the rule of liability in the case of common carriers.—1 Smith's Lead. Cases (7th Amer. Ed.), 411; *Ala. Gr. South. R. R. Co. v. Little*, 71 Ala. 611. The reasons are just as forcible why it should also obtain in the case of the keepers of inns, hotels and other like houses of public entertainment.—*Clute v. Wiggins*, 7 Amer. Dec. 455; *Chamberlain v. Masterson*, 26 Ala. 371; *Purvis v. Coleman*, 21 N. Y. 111. It is not every slight negligence on the part of the guest, of course, which will be held to excuse, as coming within this principle. Nor is the rule perhaps sound, as sometimes found to be intimated, that the negligence required to be imputed must be gross negligence, or such as evinces a want of good faith on the part of the plaintiff. The true rule in our judgment, and the one which seems to be sustained by the analogies of the law in other cases, is, that the want of ordinary care on the part of the guest, or of such as a prudent man may reasonably be expected to exercise under like circumstances, is sufficient to defeat a recovery against the innkeeper, where it appears that such negligence proximately contributed to the loss, and that the loss would not otherwise have happened. *Cashill v. Wright*, 6 El. & B. 891; *Clute v. Wiggins*, 7 Amer. Dec. 455.

In the case of *The City Council of Montgomery v. Wright*, 72 Ala. 411, we stated the sounder and better rule in our opinion to be, that "the question of negligence is always deemed one of fact for the determination of the jury, in all cases of doubt, either where the facts are disputed, or where different minds may reasonably draw different inferences or conclusions. But it is a question of law, to be decided by the court, where the facts are undisputed, and the inference to be drawn from them is clear and certain."—Shear. & Redf. Negl. § 11; Whart. on Negl. § 420; 2 Dill. Mun. Corp. (3rd Ed.) § 1026. The same rule is deemed applicable to the present case, as a proper principle by which we are to be governed in discussing the question of the plaintiff's alleged contributory negligence, to which we shall presently have occasion to allude.

The question of most importance in this case arises under

[Lanier v. Youngblood.]

the construction of sections 1549–1551 of the Code, which prescribe the manner in which hotel and inn keepers in cities may exempt themselves from liability for the loss or abstraction of "any *money, jewelry, watches,* plate or other things made of gold or silver, or of rare and precious stones, or for other valuable articles of such description as may be contained in small compass."—Code, 1876, § 1550. This condition is specified to be, that every such inn or hotel keeper "must provide himself with an iron chest, or other safe depository for valuable articles belonging to his guests or customers, and must *keep posted on his door,* and other public places in his house of entertainment, *written or printed notices* to his guests or customers, that they must leave their valuables with the landlord, his agent or clerk, for safe-keeping, that he may make safe deposit of the same in the place provided for that purpose."—Code, § 1549. It is further provided that any hotel or innkeeper, "who shall refuse or *neglect* to comply" with these requirements, *shall not be entitled* to the exemptions and benefits of the statute, but "shall, in all respects, be liable as provided by present law."—Code, § 1551.

It is not contended, or shown, that the appellant has literally complied with the requirements of the foregoing statute. It is made satisfactorily to appear that he has failed to do so, by neglecting to post the requisite written or printed notice on the door of the very room in which the plaintiff was assigned lodgings, and from which the goods and money were abstracted. The statute, being in derogation of the common law, must be strictly construed, and can not be extended in its operation and effect by doubtful implication. It clearly must be construed to mean that the notices in question should be posted on all the doors of rooms occupied by guests, and this would include the door of the room in which the plaintiff was lodged. Its purpose is constructive notice, which conclusively imputes knowledge to the guest, when there has been an exact compliance with the requirements of the statute, but not otherwise. *Beale v. Posey, supra.*

It is urged, however, that the plaintiff had *actual* notice of the facts intended to be imparted by the written or printed notice which was omitted to be posted upon the door of his room, and that this was sufficient, and must be taken to be a substitute for the constructive or statutory notice required. This was the view taken by the Court of Appeals of New York in *Purvis v. Coleman,* 21 N. Y. 111. It was shown in that case that, while no notice was posted on the door of the room assigned to the plaintiff as required by the New York statute, yet that full notice in fact was given to him *at the time of his arrival* at the hotel, and of the occupancy of his room. It was

38

[Lanier v. Youngblood.]

held by five out of the eight judges who sat, that the actual notice proved to have been given the guest was "far more satisfactory and ample than the constructive one required by the statute," and that the object and purpose of the statute had been "more than complied with." Three of the judges, however, including Chief Justice Comstock, dissented from this construction, as adopted by a majority of the court. If we were to admit the soundness of the principle declared in that case, we are of the opinion, nevertheless, that the plaintiff has not been brought within its influence. The actual notice, which the plaintiff is shown to have had, was acquired by his having observed and read the contents of printed notices in other rooms of the defendant's hotel, at some time within the *twelve months* previous to the loss of his goods for which the present action was instituted. It may be that the knowledge thus imputed may have lapsed from his memory, or that the absence of the required notice from the door may have induced the belief, that the defendant had ceased his compliance with the statute. The posting of a printed or written notice upon the door of the guest's room may often subserve a more useful office than that of constructive or even actual notice. It may answer as a *constant reminder* of his obligation to make the requisite deposit of his money and valuables, pointing like a finger-board, always observable, to his statutory duty. It may be an ocular warning, without intermission.

We need not, however, express at this time our disapproval of the case of *Purvis v. Coleman, supra,* to which we have above adverted. It answers every purpose to hold that the present case does not fall within its influence. The sounder reasoning, perhaps, is, that the statute prescribes the exact manner in which the common law liability may be escaped, and being in derogation of the common law rule, it must be strictly construed; and a strict construction excludes actual notice by failing to expressly provide for it. This view is adopted in *Batterson v. Vogel,* 8 Mo. App. 24, and seems to be sustained by the general current of decisions, at least so far as the reasoning of the adjudged cases extends.—*Porter v. Gilkey,* 57 Mo. 235; *Beale v. Posey, supra; Wilkins v. Earle* (44 N. Y. 172), 4 Amer. Rep. 655; *Ramaley v. Leland* (43 N. Y. 539), 3 Amer. Rep. 728; *Clute v. Wiggins,* 7 Amer. Dec. 457, *note.*

It is further insisted that the circuit court erred in giving the general charge to find for the plaintiff, because the question of plaintiff's negligence should have been submitted to the jury, and was improperly decided by the court. The only ground upon which we can see that the plaintiff could, in the remotest degree, be chargeable with negligence, was either in sleeping in a room without a locked door, or in failing to notify the

[Foster v. Napier.]

proprietor of the hotel that the lock was out of order. If the lock had been in good condition, it is questionable whether a failure to use it would be such contributory negligence on the part of the guest as to excuse the.defendant's liability. It was so held, however, in *Oppenheim v. White Lion Hotel Co.* (L. R.) 6 C. P. 515, although the contrary seems to have been intimated by Lord Coke in *Calye's case*, more than two hundred years ago.— 8 Coke's Rep. 203. No negligence in this particular, however, is imputable to the plaintiff, because it is shown that the catch attached to the lock of his room, and in which the bolt fastened, was gone, and there was no way to make the door secure against intruders. Nor can it be said that the plaintiff was negligent in not informing the defendant of this fact, because it was defendant's clear duty to know it without information from his guests. It would be a solecism to declare that the law requires of one contracting party the duty of notifying the other of a fact, which it is sheer negligence for the latter not to know. The plaintiff being clearly free from negligence, no doubt being raised by the undisputed facts in evidence, the question of negligence became one for the decision of the court, under the rule we have stated above, and there was, consequently, no error in withdrawing it from the consideration of the jury. The only question left for the jury to decide was the truth of the facts, and this was properly submitted to them by the general charge given.

We discover no error in the charge of the court, and the judgment is affirmed.