(76 South. 302)

### WATKINS v. HOTEL TUTWILER CO.
(6 Div. 471.)

(Supreme Court of Alabama.   June 7, 1917.)

1. INNKEEPERS ⬤➡11(2)—ESTABLISHMENT OF RELATION—RIGHTS.

When the relation of host and guest is established, the rights and duties of both parties are at once fixed by law, and remain fixed so long only as the relation continues, in the absence of a binding contract to effect different results.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 3, 19, 20.]

2. INNKEEPERS ⬤➡11(1)—ESTABLISHMENT OF RELATION—RIGHTS.

The innkeeper is liable for the goods of his guest, lost in the inn, unless the loss was due to the act of God, to that of a public enemy, or to that of the owner.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 17, 18, 21, 23.]

3. INNKEEPERS ⬤➡11(6)—ESTABLISHMENT OF RELATION—RIGHTS.

The liability of an innkeeper for loss to the goods of his guest is not confined to any particular kind of goods, but extends to money and all other classes of personal property brought by the guest to the inn for use by, or suitable to the use of, the guest.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 3, 25–27.]

4. INNKEEPERS ⬤➡11(2)—ESTABLISHMENT OF RELATION—RIGHTS.

The liability of an innkeeper for loss to the goods of his guest terminates when the relation of host and guest terminates, although the property remains in the inn thereafter, except that the strict liability may continue during a merely temporary absence of the guest from the inn.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 3, 19, 20.]

5. INNKEEPERS ⬤➡11(2)—ESTABLISHMENT OF RELATION—RIGHTS.

To preserve the liability of an innkeeper for loss to the goods of his guest during the temporary absence of the guest, there must be on the part of the guest an animus revertendi, known to the innkeeper, and the intent must be to return within a reasonable time, and the liability to compensate the innkeeper on the part of the guest must continue during the absence.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 3, 19, 20.]

6. INNKEEPERS ⬤➡11(2)—ESTABLISHMENT OF RELATION—RIGHTS.

When the guest pays his bill and departs, the strict liability does not cease at once, but continues for a reasonable time within which to remove the baggage; and if the host undertakes to deliver the baggage to a common carrier thereof, the strict liability continues until the delivery is made.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 3, 19, 20.]

7. INNKEEPERS ⬤➡11(1)—ESTABLISHMENT OF RELATION—RIGHTS.

If the host receive the goods of the guest, to keep after the relation has ceased, the former is not liable therefor as a hotel or inn keeper, but only as an ordinary bailee for or without pay, as the case may be, even though he agree to receive and forward the goods.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 17, 18, 21, 23.]

8. INNKEEPERS ⬤➡11(1)—ESTABLISHMENT OF RELATION—RIGHTS.

Where the guest, intending to return, had paid his bill, left his baggage in the check room, and deposited money with a person assuming to act as clerk of a hotel, the hotel was not strictly liable as a host.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 17, 18, 21, 23.]

9. INNKEEPERS ⬤➡11(10)—ESTABLISHMENT OF RELATION—RIGHTS.

If the guest's goods are lost or injured on account of his own wrong or negligence, the innkeeper is not liable therefor.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 31, 32.]

10. INNKEEPERS ⬤➡11(12) — ESTABLISHMENT OF RELATION—RIGHTS—QUESTION FOR JURY.

Evidence held to present a question for the jury whether a guest, on leaving a hotel and depositing money with one assuming to act as clerk, was contributorily negligent, so as not to charge the hotel for loss of the money, when the person with whom it was left absconded.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 35–40.]

11. INNKEEPERS ⬤➡11(2)—ESTABLISHMENT OF RELATION—RIGHTS.

The mere fact that the guest and the host contemplated renewing that relation within a few days, the guest having paid his bill and commenced a temporary absence from the hotel, and that the hotel keeper received the goods or money to keep until the relation should be renewed, is insufficient to charge the host as an innkeeper, but he is only a gratuitous bailee.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 3, 19, 20.]

Appeal from City Court of Birmingham; C. W. Ferguson, Judge.

Action by Leon H. Watkins against the Hotel Tutwiler Company. Judgment for defendant, and plaintiff appeals. Affirmed.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appellant is a resident of Birmingham, Ala., and is there practicing his profession. On or about Christmas, 1915, appellant and his wife became guests of the appellee hotel company, which is doing business in the city of Birmingham, and is one of the leading hotels or public inns in the state. Appellant and his wife remained guests of appellee for about a week. On New Year's Day, 1916, they decided to leave the hotel temporarily, and to make a visit to relatives and friends in the city of Opelika, Ala. To this end, at about 9 or 10 o'clock a. m., on January 1, 1916, they vacated their room in the hotel, had all their baggage, except that which they desired to take with them to Opelika, carried down to the baggage room of the hotel, and had the porter check it for them, stating to him and the clerk that they would return to the hotel within a few days, and that they desired the hotel to keep the baggage for them until their return. Appellant then paid his bill for the week, or whatever time he had been appellee's guest, and he and his wife entered their automobile and drove down, several blocks, to appellant's office, to adjust a few matters before leaving the city for their visit to Opelika. Appellant and his wife, after attending to the matters at his office, motored back to the hotel. They approached the desk of the hotel, and found a man behind the desk, apparently acting as clerk; but he was not the man who was acting as clerk when appellant paid his bill and had his trunks checked a short time before. When appellant approached, the man behind the desk turned the hotel register around, as if for appellant to register. Appellant then informed this man that he did not desire to register; that he had been a guest, and had paid his bill a short while ago, and had his trunks checked; that he was going to leave the hotel for a short visit, but would return as a guest within a few days; and that he desired to leave some money until his return. The man behind the desk replied:

"All right; we will be glad to keep it for you. Here is an envelope; please put the name and amount on it."

The man behind the desk then counted the money, taking about eight minutes in which to do so, and sealed up the envelope, and gave appellant a receipt therefor. Appellant says that during all this time of depositing the money and counting it, there being $1,900, there was present no other person than the two, appellant and the man behind the desk, whom appellant did not know, and who did not know appellant, but that appellant thought him to be the appellee's clerk, though he was not the man to whom he had paid his bill a short while before. Appellant was not acquainted with the clerk, or with any of the office force, and had no dealings with any of them, except as above recited. The man behind the desk, to whom appellant delivered the money, proved not to be the clerk or the cashier, or an officer of the hotel, but to be a man by the name of Clark, who was allowed by appellee to stay around the office a great deal, and often behind the desk, assisting in looking after the mail, and checking baggage, for the guests of the hotel. Clark was not employed by the hotel, but was allowed to stay there and make what he received in the way of tips from the guests and patrons of the hotel. Clark never delivered the money to the Hotel Company, but embezzled or stole it, and was convicted and sentenced to the penitentiary therefor.

Within a few days appellant and his wife did return to Birmingham, and went to appellee Hotel Company for the purpose of registering as guests, but did not do so. They had supper in appellee's café, and after supper went out in town, to see if their rooms or apartments had been furnished and put in order, at which place, when it was so fitted up for them, they intended to live. Their apartments they found not to be completely fitted up, but partially so, and they concluded to spend the night there, which they did, without returning to the hotel. On the next day, however, appellant did go back to the hotel, and there asked for his money, the $1,900 left there. He was informed by appellee that the money was not there and could not be found, and that Clark, the man with whom he left it and who signed the receipt, was no longer there or in the employ or in the hotel of appellee. On the next day after this, appellant sent for his trunks, which were delivered; but he has never received his money, and brings this suit to recover it of appellee.

The complaint in all contained seven counts. Some of the counts sought to charge the appellee as a hotel keeper or an innkeeper, on the theory that appellant was at the time of the loss of the money actually a guest of appellee. Other counts sought to charge appellee as a hotel or inn keeper, on the theory, not that appellant was actually a guest at the time of the loss, but that he had been such, shortly before, and had left his baggage at the hotel, with the intention to soon return and renew his relation of guest, and that appellee was informed of these facts and, with knowledge thereof, received his baggage and money, and was therefore liable to him for their loss, just as if the relation of host and guest had actually existed. Other counts, or one, at least, sought to charge appellee, not as a public hotel or inn keeper, but as a gratuitous bailee; that appellee was guilty of such negligence as to render it liable for the loss or theft of appellant's money by Clark, who, plaintiff was led to believe, was appellee's agent for the purpose of receiving appellant's money for safe-keeping by appellee during appellant's absence from the hotel. The trial court gave the affirmative charge as to all the counts seeking to charge appellee as a public

hotel or inn keeper, but submitted to the jury the questions whether appellee was liable as a gratuitous bailee, and whether it was liable as for actionable negligence in and about the loss or theft of appellant's $1,900 so left with Clark. The jury found for the defendant on this last theory, and plaintiff appeals.

Percy, Benners & Burr, of Birmingham, for appellant. Tillman, Bradley & Morrow, of Birmingham, for appellee.

MAYFIELD, J. [1, 2] The duties and obligations of public hotel and inn keepers to their guests are in the main imposed by law. As to most of these duties and obligations, there is no need of a special contract between the parties. When the relation of host and guest is established, the rights and duties of both parties are at once fixed by law, and remain fixed so long only as the relation continues, in the absence of a binding contract to effect different results. Since the obligation of the public hotel or inn keeper to his guest, in the main, is created by and depends upon the law, and not the will of the parties, the nature of the obligation must depend upon the law that creates it; and the law may vary in many of the different jurisdictions. While there is some difference among various jurisdictions as to the extent of the liability of the innkeeper as for the loss of the goods of his guest while they are infra hospitium, the great number, including this court, has held that the innkeeper is liable for the goods of his guest, lost in the inn, unless the loss was due to the act of God, to that of a public enemy, or to that of the owner. Innkeepers are to this extent, therefore, insurers of the goods of their guests, and for such as are lost while under the protection of the inn must make restitution, except as above stated. This strict rule, to which public innkeepers and carriers are held, as for loss of or injury to the goods of their guests or patrons, is justified on the ground of public policy; and, being so strict, it ought not to be extended beyond the reasons which called it forth and justify its maintenance. Loss of a guest's goods by theft on the part of the innkeeper's servants, while the goods are in the protection or custody of the inn, will charge the innkeeper, under the rule, or even if they are stolen from the inn by a stranger, unless the owner of the goods be in some way responsible for the presence of the stranger in the hotel. The authorities seem to be much divided on the question of liability for loss by a fire unavoidable on the part of the innkeeper or that of the owner. This phase, however, is not here important.

[3] The responsibility is not confined to any particular kind of goods, but extends to money and to all other classes of personal property brought by the guest to the inn and used by, or suitable to the use of, the guest. There are, however, some exceptions made by certain of the courts and jurisdictions, unnecessary here to be noticed. All public boarding or lodging houses, and all boarders and lodgers at public houses, do not fall within these strict rules of liability and rights, applied to public inns and hotels, and to their guests. An ordinary boarder, and a guest at a public inn or hotel, may have different rights as to the loss of their property; but this distinction is of no importance here.

[4, 5] This strict liability which the law imposes upon innkeepers terminates when the relation of host and guest terminates, even though the property of the guest remain in the inn. The relation, with its strict liability, however, may and does continue during the mere temporary absence of the guest from the inn. The length of time during which the absence may continue without terminating the relation is not fixed by law; the question of its duration in a given case is important only as evidence to determine whether the relation of host and guest continues during the interim. In order for this relation to continue during the guest's absence from the inn, however, the law does prescribe certain conditions, which must be fulfilled:

First. There must be on the part of the guest an animus revertendi, which must be known to the innkeeper, or he must be properly chargeable therewith.

Second. The intent must be to return within a reasonable time.

Third. The liability to compensate the innkeeper, on the part of the guest, must continue during the absence. The right of the host to charge the guest is the criterion of the former's strict liability as host to the latter.

[6] When the guest pays his bill and departs, the strict liability does not cease at once, but continues for a reasonable time within which to remove the baggage; and if the host undertakes to deliver the baggage to a common carrier thereof, the strict liability continues until the delivery is made.

[7] If the host receive the goods of the guest, to keep after the relation has ceased, the former is not liable therefor as a hotel or inn keeper, but only as an ordinary bailee for or without pay, as the case may be, even though he agree to receive and forward the goods.

[8] It therefore follows, under the undisputed facts of this case, that appellee could not be charged with the strict liability of host to guest, for loss of the latter's money deposited with Clark on the occasion in question. The case most like the one in question, which we have seen, is that of Hays v. Turner, 23 Iowa, 214. Another case very similar is that of Miller v. Peeples, 60 Miss. 819, 45 Am. Rep. 423. Still another case somewhat similar is that of Glenn v. Jackson, 93 Ala. 342, 9 South. 259, 12 L. R. A. 382. In each and all of these cases, under

similar circumstances, the hotel or inn keeper was held not to be liable under the strict rule as such keeper, because the relation of host and guest had ceased when the loss occurred.

Appellant, however, relies upon a dictum in the opinion of Coleman, J., speaking for the court, in the case of Glenn v. Jackson, supra, to make the appellee in this case liable as a hotel keeper. The facts in the two cases are different, in that the departing guest in that case did not notify the host of his intention to return within a few days, though he had the intent, and did so return. The dictum, however, does not support the contention to the extent of holding that a mere agreement, on the part of the host or his clerk, to keep baggage until the guest returns, would make the host liable under the strict rule of hotel or inn keeper, which the law fixes, instead of liable merely by virtue of the special agreement or contract so to keep it—that is, as an ordinary bailee. In the Glenn v. Jackson Case the hotel keeper was held, not liable in any capacity, because the departing guest left his baggage in the care and charge of the porter personally, that the porter did not represent the hotel in receiving the baggage, and that the doctrine of respondeat superior did not apply.

All the authorities—both the text-books and the decisions of courts—hold that, to continue the relation of host and guest after the latter has paid his bill to the time of leaving and departed, the guest must be liable as such during his absence. Here the plaintiff admits that he caused his baggage to be put into and kept in the baggage room during his absence, and that he paid his bill in order not to be liable as a guest while away. This, of course, terminated the relation, and released appellee from the strict rule of liability fixed by law upon public hotel and inn keepers. While a liability may still exist as for the loss or theft of moneys or goods of a departing guest, left with the servants or agents of the host, against appellee in the case at bar, yet it is not the liability of a hotel or inn keeper, but that only of an ordinary bailee.

[9] The trial court instructed the jury that, if they found that the loss of plaintiff's money was proximately caused by his own negligence in intrusting it to Clark, on the occasion and in the manner shown by the evidence, they should find for the defendant. No exception was reserved to this part of the oral charge; but the plaintiff did ask written instructions to the jury that they could not find the plaintiff to have been guilty of contributory negligence in leaving or depositing his money with Clark. This instruction was refused. The law is well settled that, if the guest's goods are lost or injured on account of his own wrong or negligence, the innkeeper is not liable therefor. It is an application of the familiar maxim that no man shall profit by or take advantage of his own wrong. Beale v. Po-sey, 72 Ala. 323; Lanier v. Youngblood, 73 Ala. 587. In fact, one of the exceptions which the law has ingrafted upon the strict liability rule against hotel or inn keepers is that the host is not liable as for losses occasioned by the owner of the goods, the guest.

[10] We cannot agree with appellant that the issue of plaintiff's fault or negligence, contributing to the loss, was not a question of fact for the jury; that is, that there is no evidence in this case which would warrant or authorize the jury to infer that plaintiff was guilty of negligence in depositing or leaving his money with Clark. In the first place, the evidence is practically without dispute that Clark was not the clerk, register, or treasurer of the Hotel Company, and that in fact and in law he had no real authority to bind the defendant, by receiving plaintiff's money as he did. It is very true that, if defendant held this man out to the public or to the plaintiff as being invested with such authority, defendant will not be heard to deny or dispute his authority, as the public, or one of the public, has acted on such apparent authority to his own detriment; but we cannot say, under all the evidence in this case, that plaintiff was guilty of no fault or negligence in dealing with Clark, on the occasion in question, as the clerk, register, or cashier of defendant, and therefore as possessing the authority to take the deposit and charge the defendant with the custody thereof. Plaintiff had been a guest at this hotel for a week before he made the deposit. He had had the opportunity, therefore, to know who were the clerks, registers, or cashiers of the hotel, and what relation, if any, Clark occupied toward the hotel. True, this alone might not be sufficient to charge him absolutely with such knowledge; but it was a circumstance for the consideration of 'the jury in determining this question. It was also without dispute that plaintiff, on the same morning and just a short while before he made the deposit, requested his bill and paid his money therefor to another and a different man than the one to whom he subsequently paid the $1,900 as a deposit. It could be well said that the hotel might have two or more persons authorized to so receive deposits; yet this was a circumstance to put plaintiff on inquiry, before depositing $1,900 with a man whom he did not know, whom he says he never saw before, and whom he knew was not the man to whom he had paid his bill. There were other circumstances, not necessary to mention, but having evidential weight with other evidence; and upon consideration of the whole evidence we are of the opinion that the trial court properly submitted to the jury this question, and properly declined to instruct peremptorily thereon.

Counsel for appellant insist that the question whether or not the Hotel Company should be held as a gratuitous bailee should

have been submitted to the jury. As we understand the record, this was the only question submitted to the jury by the trial court.

[11] The trial court properly gave the affirmative charge as to the counts seeking to charge the defendant as an innkeeper, and properly instructed the jury that under all the evidence the relation of host and guest had terminated before the deposit was made. The mere fact that plaintiff and defendant both contemplated renewing that relation within a few days, and that the latter received the goods or money to keep until the relation should be renewed, would not be sufficient to charge defendant as an innkeeper, but only as a gratuitous bailee. So this question must have been submitted to the jury; there was, under the charge of the court and under the plaintiff's own evidence, no other question to be submitted.

The only theory upon which the defendant could be held liable, as we have before said, is that it was a gratuitous bailee, and that by virtue of having held out Clark as its agent to receive the deposit in question, and that plaintiff was not guilty of any fault or contributory negligence in making the deposit with Clark. We are unable to find any other theory upon which the plaintiff could have recovered, or any other disputed issue that could have been submitted to the jury. The undisputed evidence shows that Clark was not, in fact, the agent of defendant to receive the deposit, and that the defendant did not in fact receive it; but if the defendant held Clark out to the public and to the plaintiff as having such authority, then defendant might be as liable as if Clark in fact had had ' such authority. This question, and that of the plaintiff's contributory negligence, were the only issues of fact as to which there was dispute, or as to which different inferences might be drawn by the jury—as we read the record—which were submitted to the jury.

From what we have said, it follows that there was no error in the giving of any of defendant's requested charges, nor in the refusal of any of those requested by plaintiff. The plaintiff, of course, failed to prove either of the counts which alleged that the agent or servant who received the money had authority from defendant to receive it, and, in so doing, was acting within the line and scope of his authority. The only theory, as we have said before, upon which the defendant could be held liable, was that it was guilty of actionable negligence in allowing Clark to receive the deposit, and in inducing plaintiff to believe that Clark did have authority from defendant to receive it. None of the counts as to which the affirmative charge was given sought to recover on this theory, nor did any of the counts, so far as that is concerned; but the trial court did

submit the case to the jury under the sixth count, and of course plaintiff cannot complain as to this error, as it was in his favor.

We find no reversible error in the record, and the cause is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.