[No. 24163. *En Banc.* June 6, 1933.]

C. L. FEATHERSTONE, *Respondent,* v. VICTOR DESSERT et al., *Appellants.*[1]

*Joseph A. Albi,* for appellants.

*Richard S. Munter* and *Justin C. Maloney,* for respondent.

STEINERT, J.—This is an action to recover for the loss of a diamond ring, a watch and chain, a penknife

[1]Reported in 22 P. (2d) 1050.

and a small amount of cash by plaintiff while a guest of the Pacific Hotel in Spokane, owned and operated by defendants. Trial before the court, without a jury, resulted in findings and conclusions in favor of plaintiff. From a judgment entered thereon, defendants appeal.

Respondent was a traveling man of about twenty years' experience, and as such had stopped at the Pacific Hotel on various occasions. On June 10, 1931, he registered at the hotel, and subsequently resided there continually until August 12th of the same year, at first occupying a room on the third floor and later one on the second. On the evening of June 26, 1931, he was wearing a diamond ring and was displaying it to a friend in the lobby, in the presence of others. At about eight-thirty in the evening, he went to his room and undressed to take a bath. The bathroom was a few doors away from his own room. He removed the ring and put it in his trousers' pocket in a coin purse, as was his custom on such occasions. On going to the bathroom, he locked the door of his own room. After bathing, he returned to his private room and retired. The next morning, he discovered that his trousers' pockets had been rifled and the valuables above mentioned stolen.

As an affirmative defense to the action, appellants pleaded compliance with the "act to protect hotel keepers, etc." which is chap. 216, Laws of 1929, p. 587. Section 2 of the act, so far as it is pertinent to our present inquiry, reads as follows:

"Whenever the proprietor, keeper, owner, operator, lessee, or manager of any hotel, lodging house or inn shall provide a safe or vault for the safekeeping of any money, bank notes, jewelry, precious stones, ornaments, railroad mileage books or tickets, negotiable securities or other valuable papers, bullion, or other valuable property of small compass belonging to the

guests, boarders or lodgers of such hotel, lodging house or inn, and shall notify the guests, boarders or lodgers thereof by posting a notice in three or more public and conspicuous places in the office, elevators, *or public rooms,* or in the public parlors of such hotel, lodging house or inn, stating the fact that such safe or vault is provided in which such property may be deposited; and if such guests, boarders or lodgers shall neglect to deliver such property to the person in charge of such office, for deposit in the safe or vault, the proprietor, keeper, owner, operator, lessee or manager, whether individual, partnership or corporation, of such hotel, lodging house or inn shall not be liable for any loss or destruction of any such property, or any damage thereto, sustained by such guests, boarders or lodgers, by negligence of such proprietor, keeper, owner, operator, lessee or manager, or his, her, their or its employees, or by fire, theft, burglary, or any other cause whatsoever;'' (Italics ours.) Rem. Rev. Stat., § 6862.

The answer alleged specifically that three notices, in the form required by the statute, were posted in more than three of its public rooms. The immediate question with which we are here concerned does not involve the sufficiency of the contents of the notices, but only whether they were posted in the places required by the statute; in other words, whether they were posted, if at all, in *public rooms.*

According to the plat filed as an exhibit in the case, the hotel is rectangular in shape. The outside dimensions are not shown by the record, but, according to the scale shown by the map, it appears to be approximately seventy-four feet east and west by forty-seven feet north and south. On the second, third and fourth floors of the hotel there is a space just west of the center line measured north and south. This space is about thirty feet in length along its east walls and about twenty-three feet in length along its west walls. It is also about eleven and one-half feet in width along

its south end and six feet in width along its north end. The difference between the east and west, and also the north and south, dimensions comes about from the fact that the elevator shaft, six feet by seven feet in floor area, is located in the northwest corner of the space, considered as a complete rectangle.

A hallway four feet wide, and extending east and west, bisects the building and also the space to which we have just referred. The entrance to the elevator is from its east side. The space immediately in front, or east, of the elevator is thus six feet by seven feet; to the right, or south, of the elevator the space is twelve feet by twenty-three feet. Leading into this widened space from either side of it is the four-foot hall above referred to. At the south end of the widened space is a stairway leading to the floors above and below. Bordering the entire space and the bisecting hall are walls.

The evidence preponderates to the effect, and the court so found, that the notices, in proper form, were posted on the second, third and fourth floors on the panels which form the outside of the elevator shaft, and around the corner from the entrance thereto, that is, on its south side, but in full view of those who used either the elevator or stairway. In the office, a copy of the innkeepers' act was posted on the wall back of the clerk's counter or desk; this, however, could not be read by one standing in front of the counter. On the register which guests, including the respondent, signed was a printed notice, reading, ''All money, jewelry and other valuables should be left at the office. Otherwise the Management will not be Responsible for Any Loss.'' No notices other than the copy of the act were posted in the office, or in the elevator, or in any public parlor of the hotel. Respondent testified that he never saw the notices or the printed matter on the register,

nor read the copy of the act posted in the office. The hotel kept a suitable iron safe for the safekeeping of valuables.

■ The posting of a copy of the act in the back of the office where it could not be read by guests clearly was not a compliance with the statute. Nor did the notice printed on the hotel register constitute compliance. *Gillett v. Waldorf Hotel Co.*, 136 Wash. 615, 241 Pac. 14; Beale on Innkeepers and Hotels, § 418, p. 277.

■ The question then remains whether the posting of the notices on the sides of the elevator shaft constitutes a sufficient compliance with the statute. This, in turn, depends upon whether the enlarged space around and about the elevator constitutes "a room" within the meaning of the act.

It is the rule in this state that the innkeeper can not exempt himself from liability except upon a strict compliance with the statute, and that the notice required by the statute must be given exactly as provided. *Watt v. Kilbury*, 53 Wash. 446, 102 Pac. 403; *Gillett v. Waldorf Hotel Co.*, 136 Wash. 615, 241 Pac. 14. It is the rule, generally, that the provisions of the statute relative to the posting of notices must be expressly complied with. Beale on Innkeepers and Hotels, § 417.

In the interpretation of a statute, the intent of the legislature is the vital thing, and the primary object is to ascertain and give effect to that intent. When the intention of the legislature is clearly apparent from a reading of the statute, then there is no room for construction. A particular word is not always to be given a strict and literal meaning; it is the sense in which it was intended to be used that furnishes the key to its interpretation. In the absence of anything in the context to the contrary, words are to be taken as under-

stood in their ordinary and popular sense. Lewis' Sutherland Statutory Construction (2d ed.), 389, 390; *Knipe v. Austin,* 13 Wash. 189, 43 Pac. 25, 44 Pac. 531. A "room" as defined in Funk & Wagnall's Standard Dictionary

" . . . is a space for occupancy or use enclosed on all sides, as in a building; an apartment; frequently named for the use to which it is put, as, bedroom, dining-room, engine-room, gun-room, tool-room."

But it is hardly necessary to resort to lexicography to determine the meaning of the word. It is one of daily use, and has a well defined signification. Whatever it may denote with reference to a building, it is commonly and popularly applied to something other than a mere hallway, passageway or entrance to an elevator. Should one layman say to another, "I will meet you in the *hall* or *hallway* by the elevator," neither will misunderstand what is meant. Should he say, "I will meet you in the *room* by the elevator," it would probably provoke an inquiry for a more specific designation. Had the legislature intended that such notices might be posted in *hallways,* it would either have included such spaces within its classification of places for posting, or else it would have merely provided for posting in three or more public and conspicuous places in the hotel without further designation of them.

It is to be remembered that the liability of innkeepers at common law, and so pronounced in this state in *Watt v. Kilbury, supra,* is that of an insurer. To exempt himself therefrom, he must strictly comply with the statute which restricts and limits his liability. Under the evidence in this case, we must hold that appellants did not post the notices in the public rooms of the hotel, and therefore did not comply with the statute.

■ The appellants next contend that, even though it be held that there was not a compliance with the statute, nevertheless the respondent had actual knowledge of the rule requiring guests to use the safe provided for their accommodation in the deposit of valuable articles, and that such actual knowledge displaced and dispensed with the necessity of constructive notice under the statute. .Whatever may be the rule in a few jurisdictions upon this question, the overwhelming weight of authority is to the contrary. Commenting upon the case of *Purvis v. Coleman & Stetson,* 21 N. Y. 111, which appellants strongly rely upon as supporting their contention that actual notice takes the place of posting, Mr. Beale in his work on Innkeepers and Hotels, p. 282, § 421, says:

"This decision has been much criticised in later cases, and several courts have declined to follow it. Thus, in *Batterson v. Vogel* the innkeeper who had not posted a notice in the guest's room, as required by the act, was not absolved though it appeared that the guest had read a copy of the act on the register; the court saying that the act did not provide that actual knowledge of the provisions of the act should take the place of posting. And this seems to be the better view. The statute prescribes the exact manner in which the innkeeper, without any agreement on the part of the guest, may escape his common-law liability. It is in derogation of the common law, and should be strictly construed against the innkeeper, who is attempting in reliance upon it, to protect himself against an obligation towards his guest which the common law would create. The statute makes no provision for an actual notice, and a strict construction of the statute does not permit the innkeeper who has failed to comply with the terms of it to assert the actual notice of the guest as a sufficient substitute for the statutory requirement. Indeed, it is not accurate to say that the statute assumes constructive notice on the part of the guest as the result of posting the notice. It is more exact to say that,

without regard to knowledge on the part of the guest, the statute extends a privilege to the innkeeper upon an express condition; which condition he must perform if he would avail himself of the privilege."

See, also, the following cases: *Batterson v. Vogel*, 8 Mo. App. 24; *Lanier v. Youngblood*, 73 Ala. 587; *Olson v. Crossman*, 31 Minn. 222, 17 N. W. 375; *Sherrill v. King Edward Hotel Co.*, 2 Dom. L. R., 612 (Ontario Supreme Court, 1929).

Holding, as we do, that the statute was not complied with, and that actual knowledge of the respondent, if such he had, of the provisions of the act, does not take the place of constructive notice under the statute, the judgment must be, and is, affirmed.

MAIN, MITCHELL, BLAKE, HOLCOMB, and MILLARD, JJ., concur.

TOLMAN, J. (dissenting)—I am unable to agree with the majority in its final conclusions.

The majority says:

"The question then remains whether the posting of the notices on the sides of the elevator shaft constitutes a sufficient compliance with the statute. This, in turn, depends upon whether the enlarged space around and about the elevator constitutes 'a room' within the meaning of the act."

and again:

"A particular word is not always to be given a strict and literal meaning; it is the sense in which it was intended to be used that furnishes the key to its interpretation."

The legislature was concerned with the giving of adequate notice to guests, and in naming specifically public rooms it was plainly the intention to use those words "public rooms" not in a technical architectural sense, but only in the sense of requiring the notices to

be displayed publicly where guests would most certainly see them. If the display of a notice in the elevator would inform guests, then, by the same token, a display of the notice in the elevator lobby, where the guests, using the elevator and also those using the stairway, would necessarily see it, was a better and a more public notice than would have been given if the statute had been strictly followed.

Admittedly, the notices were displayed in the elevator lobbies; and, in my judgment, such elevator lobbies were "public rooms" within the plain intent and meaning of the legislature. This, coupled with actual knowledge on the part of the guest, should be conclusive.

If the common law rule that an inn keeper is an insurer, requires such complete, absolute, technical and minute compliance with the literal terms of the statute to absolve him from his duty as an insurer as the majority now holds, then, in my judgment, it is high time that the law should be so modified as to take cognizance of the purpose of the act, and to hold that, if that purpose is served substantially and to all practical intents and purposes so that no guest of ordinary intelligence is left uninformed, then the act has been complied with.

I therefore dissent.

BEALS, C. J., concurs with TOLMAN, J.